VITAGRAPH, Inc., et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5996. Decided December 23, 1938. (85 P. 2d 601.)

*Stewart, Stewart & Carter* and *E. B. Cannon,* all of Salt Lake City, for plaintiffs.

*Joseph Chez,* Atty. Gen., and *Vernon Romney,* of Salt Lake City, for defendants.

LARSON, Justice.

From an order of the Industrial Commission awarding compensation plaintiff brought certiorari, presenting the single question: Was the accident one arising "out of, or in the course of employment"? Defendant, Pierre Oliver Perry, had a home approximately two miles southeast from Sugar House in Salt Lake County. He was employed at times, on assignment, by the petitioner as a checker at mov-

ing picture houses in Salt Lake City and vicinity where and when Vitagraph Pictures were being shown on percentage basis. He was not regularly employed and received no fixed weekly wage.

He would receive orders from the petitioner to be at a specified theatre during the time a certain film was being shown. He was to be at the showhouse about 30 minutes before opening time, get from the ticket seller the number of the first admission ticket on the roll, and take his place unobtrusively near the entrance door, register the number of persons attending by punching a small tallying or counting device he held in his hand. Each hour he would check with the ticket seller the number of tickets sold, and at the conclusion of the day's showing when the ticket office closed he would take the number of the last ticket sold, check with the theatre office the number of admissions on passes and his work for the day was done. He was required to fill out and send to the company's offices, at Salt Lake City, Denver, and New York, after obtaining the o. k. of the showhouse manager thereon, copies of a report on forms furnished by the company. There was no fixed time or place where these reports were to be made or sent in except that it was expected to be done with reasonable expedition. Sometimes the employee prepared these reports before leaving the theatre, at other times he prepared them after he arrived home either that night or the following morning at his convenience. His compensation varied with each assignment depending upon the time and work involved. On the night of the accident he had been checking at the Southeast Theatre in Sugar House, about two miles from his home. After the theatre closed he put the tallying machine in his pocket, walked up the street a short distance and while crossing the street to board a bus on his way home was struck by an automobile and injured. He contended that since he generally prepared his reports at home and the company provided no definite place at which they were to be prepared and as he intended to prepare them that night after he ar-

rived home, his injuries occurred in the course of his employment. The Commission awarded compensation and the employer brings certiorari.

Did the accident arise out of or in the course of his employment? It certainly did not arise out of his employment. He was not at work when the accident occurred; he was not injured by any one or any thing employed or furnished by his employer; he was away from the place of his employment; neither the automobile, the bus, the street, nor any thing or person thereabouts or connected therewith was owned, operated, employed or controlled by his employer, nor was used or employed at all by the company. *Industrial Commission of Ohio* v. *Gintert,* 128 Ohio St. 129, 190 N. E. 400, 92 A. L. R. 1032; *Greer* v. *Industrial Comm.,* 74 Utah 379, 279 P. 900. But was he injured in the course of his employment? The question as to when one is in the course of his employment has often been before the courts. Certain indicia to guide one in answering the question have been laid down by the courts but no fixed rule can be promulgated and each case must be determined largely from its own facts. It seems definitely settled that if a workman is injured in the normal course of things, in going to or from his work or place of employment, that is the result of the general hazards which all must meet and assume and is not in the course of his employment. *Denver & Rio Grande Western R. Co.* v. *Industrial Commission,* 72 Utah 199, 269 P. 512, 62 A. L. R. 1436; *Fidelity & Casualty Co.* v. *Industrial Commission,* 79 Utah 189, 8 P. 2d 617; *Greer* v. *Industrial Commission,* 74 Utah 379, 279 P. 900. Such is what may be called the plant rule, where the employee does not attach himself to his employment until he arrives at the plant or locus of his work, and he is not in the employment after he leaves the plant or situs of his work. The plant or situs need not always or constantly be in one place. A familiar example is the case of a mason or carpenter working for a building contractor. He may work for a time on a building being erected on A

street and then work for a time on a building on B street and then on C street. Each of such buildings is for the time the plant or locus of his work, and his employee relationship begins when he arrives at his work and ends when he leaves the situs thereof. But there are a number of exceptions to this general rule where the circumstances or conditions of the particular case take the workman injured on the street out of the rule as stated.

We shall not attempt to define the boundaries or limits of such classes but shall indicate the principle underlying each of them, and the general distinguishing features between them, which may prove helpful in understanding and applying the law to particular cases. An apparent exception to the general or plant rule where an employee was injured before he arrived at the locus of his work ■ and attached himself to it is found in *Cudahy Packing Co.* v. *Industrial Commission*, 60 Utah 161, 207 P. 148, 28 A. L. R. 1394. There the employee was injured while on his way to work as he crossed the railroad tracks just outside the plant property. Under the facts of that case it was necessary for the employee to enter the plant over that particular road, being the only road leading to the plant, and the decision is predicated upon the inferable fact that the danger incident to crossing that railroad track, by reason of its location and proximity to the packing plant and the necessity of crossing it, must have been within the contemplation of the parties at the time of employment as an incident thereto. Or stated otherwise, it is founded upon the principle that due to the location of the plant and the necessity for the workman using that particular road at that place of danger, the contemplation of the parties was that the plant, or the control of the employer over the employee was extended beyond the actual confines of the plant to the road which the employee was required to use. The case is within the plant rule but extends the confines of the plant or situs of employment beyond the actual physical building to the approaches to the work, which he was required to use, when

the facts indicate that the danger incident to such use must have been in contemplation of the employer and employee at the time of employment as danger incident to the employment and a necessary part of the plant establishment. This is the principle also underlying the case of *Bountiful Brick Co. v. Industrial Comm.*, 68 Utah 600, 251 P. 555.

Another exception to the plant or general rule is what is known as the special mission, or special errand doctrine, as typified in *Kahn Bros. Co. v. Industrial Comm.*, 75 Utah 145, 283 P. 1054. This exception covers cases where the employee has detached himself from the plant or place of employment and is injured through exposure to the hazards general to the public, when such exposure is brought ■ about while in the performance of some task or duty assigned him by the employer, and which took him to the place of injury. The principle underlying such cases is that being at the place of injury under the orders of the employer and upon his business, the situs or locus of the employment is at the point where the employee is at any particular moment while carrying out the mission and performing the orders of the employer. The employee is exposed to the danger because the employer and his business put him there It was not the workman's own whim or business that brought him into the place of danger but the order of business of the employer, and presupposes that the workman but for the fact that he was at the time of injury actually doing work for the employer would not have been at the place of injury. This is distinguished from the situation in which the workman is injured while going to and from the plant or place of employment because such person is not at the time of injury engaged in doing anything for the employer.

Another apparent exception to the plant rule is illustrated in the case of *Morgan v. Industrial Commission*, 92 Utah 129, 66 P. 2d 144. That case rests upon the fact that the injured party was upon a special errand for the employer

at the time of injury, but it presents some characteristics which distinguish it from the common cases in
this category. These are the facts that the employee
in the particular circumstances was for all practical purposes his own superior, directed his own movements and
hours and place of work, and by his own direction put himself upon the errand and thus in the place of danger. His
journey was not to attach himself to his usual work nor
made in detaching himself from it. It was undertaken for
no purposes of his own and for no personal reasons, but to
carry out a special or additional duty at times imposed upon
him by the conditions of his employment in regard to the performance of which he stood in the situation of the superior
giving orders to himself. In his regular teaching assignments
Morgan would be operating under the plant rule, attaching
himself to his work upon arriving at the schoolhouse and detaching himself upon leaving it. But in the special or added
duties which his employment necessitated, and which in the
nature of things were independent of and no part of his
regular work which had a definite situs or locale, when he
fared forth upon the journey to perform such special duty
he became attached to his work as one upon a special errand,
and while so occupied the locus of his work was where he
happened to be.

The traveling salesman is given an assignment by his employer to cover a certain territory, making certain specified
calls or general calls as he may determine. In carrying out
this assignment he is usually his own superior and director.
The course he may travel, the order of calls and the length
of time devoted to each are largely within his own discretion
and direction. As long as the activity in which he is at any
given moment engaged is done in the furtherance and interest of his employer's business, upon which he was sent
forth, he himself determines the locus or situs of his employment—it is where his work puts him. But as soon as
his activities cease to be induced, controlled, or undertaken
primarily for the business of his employment, and are under-

taken or controlled primarily by or for his personal interest affairs or business, he detaches himself from his employment and the risks are his own.

Another case is that of *Beaver City* v. *Industrial Commission*, 67 Utah 8, 245 P. 378, in which the city marshal was injured while at his home cleaning his gun, which he was required to carry and to keep clean. The essential basis upon which that award rests is clearly set forth in the opinion in which the court says [page 379] : "the marshal was not injured while going to some place to clean the gun, but while he was actually cleaning it, actually ■ engaged at something which it is not disputed was an incident to his employment." And so the rule through the authorities seems to be that where a workman is injured in the course of his employment, to be compensable the workman must at the time of the injury have been engaged in doing some work for the employer, or under the direction and control of the employer, or at the point of danger pursuant to or in carrying out the order or direction of the employer, or in doing some act necessary to be done for the employment or incidental thereto and not detachable therefrom.

We are concerned here with only one of such exceptions. This case to be compensable at all must come within the exception that where the employee, either on the employer's or his own time, is upon some substantial mission for the employer growing out of his employment.

The second point argued is that even though this case falls within the rule that not until he arrives at the situs of employment, and only so long as he is working there, is the employee in employment, still he had his report to make out at home and so in going home to do it he was on an errand for his employer. Had an injury occurred while ■ he was in the actual work of making out his report the principle of the Beaver City Case, supra, might apply. He was however only on his way home after his duty or shift at the theatre was completed. Was the employee at

the time of the injury upon some substantial mission for his employer? Was the errand or interest of his employer's business an important element or consideration in putting the employee at the place of the accident or in making the journey? Where a personal interest and the business of the employer both enter into a journey, or play a role in putting the employee upon the street where the accident occurs, one test sometimes employed to determine if the accident occurred in the course of employment may be stated thus: If the motivating purpose of the trip was personal interest, that is, if the journey or trip would have been made just the same without the interest or task to be done for the employer, an injury in the course of travel is not in the course of employment, but if the journey or trip would have been made for the work or business of the employer, had the element of personal interest been lacking, the injury was in the course of employment and is compensable. To establish liability the inference must be permissible that even though the private errand were cancelled the trip would have been made. On the other hand, if the journey would have gone forward without the business errand or if the work had no part in creating the necessity for travel, or if without the private purpose the trip would not have been undertaken, though the business errand was undone, the risk is incident to private purposes because the travel is then personal. See also *Clawson* v. *Pierce-Arrow Motor Car Co.*, 231 N. Y. 273, 131 N. E. 914. In *Greer* v. *Industrial Commission of Utah et al.*, supra, this court speaking through Mr. Justice Folland, said:

"In London Guarantee Case [*London Guarantee & Acc. Co.* v. *Industrial Acc. Comm.*, 190 Cal. 587, 213 P. 977] is a statement of the exceptions to the general rule, as follows:

" 'Exceptions to the general rule are cases where an employe, either in his employer's or his own time, is going to or from his place of employment on some substantial mission for his employer growing out of his employment. In such cases it is held that the employe is within the protection of the act. But the mission must be the major factor in the journey or movement, and not merely incidental

thereto; that is to say if incidental to the main purpose of going to or from the place of employment, it would not bring such person under the protection of the act. If on the other hand, the main purpose of going or coming was to perform some act arising out of his employment, he would be under the protection of the act although, incident to the performance of such duty, he might be going or coming from his home.' " *Frandsen* v. *Industrial Commission,* 61 Utah 354, 213 P. 197.

A careful reading of the record convinces us that there is no evidence that the applicant was in fact in the course of his employment at the time of the injury or that the injury arose out of his employment. Of course, as is customary with most employees, he was required to go from his home to his work and return therefrom to his home, not by any command, order or requirement of the employer but from personal reasons and necessities. Going to the theatre from his home and returning home from the theatre were matters that were within his own control and convenience as to time, place, or manner, road, direction or means of conveyance. On those matters he exercised his own judgment and pleasure. He undoubtedly intended to tabulate his report to his employer at his home, but that was for his personal convenience and the place of his own choosing. Had he tabulated the report at the theatre as he sometimes did at other theatres he would still have the trip to his home just the same. In going to his home he was not on a mission or errand for his employer, nor was he performing a duty for his employer. He was not ordered, required or requested to make the trip by the employer nor was it necessary that he go to his home to make his report. He was not following instructions of his employer nor under any supervision or control of the employer. The fact that he may or actually contemplated doing the work of tabulating his report after arrival at his home was merely incidental to the cause and purpose motivating him in making the trip to his home. The tabulating of his report was not the motive actuating the journey; it was not a major purpose of the trip nor was it a substantial reason for the trip being undertaken. If the re-

port was never to have been made while home, he would still have gone there as he did. It was late at night and applicant, sixty-six years of age, was going home and was not intent upon the business of the employer. And so are the authorities in this and most other jurisdictions. *In Greer* v. *Industrial Comm.*, 74 Utah 379, 279 P. 900, we said:

"But the mission [for the employer] must be the major factor in the journey or movement, and not merely incidental thereto; that is to say if incidental to the main purpose of going to or from the place of employment, it would not bring such person under the protection of the Act. * * * Under the facts in the instant case, it is clear that the deceased was not upon any *special mission* for his employer at the time of the accident. There was nothing that he was doing for his master at the time which exposed him to the perils of the street. He was merely going from his home to his place of employment. The fact that he was carrying the saw was merely incidental. * * * In this case the deceased was not injured while sharpening the saw at his home. The accident did not occur while he was actually engaged in the performance of a duty for the employer. The dangers of the street between his home and the stockyards were not incident to his employment, but were dangers common to all."

And in *Industrial Commission of Colorado* v. *Anderson*, 69 Colo. 147, 169 P. 135, L. R. A. 1918F, 885, it is said [page 136]:

"The intent is to make the industry responsible for industrial accidents only, and not those resulting from hazards common to all. * * * 'In passing upon this question, an humanitarian emotion ought not to take the place of sound judgment in the weighing of evidence * * * It is sufficient to say that an injury is received "in the course of" the employment, when it comes while the workman is doing the duty which he is employed to perform. * * * If the place at which the injury occurred is brought within the contract of employment, by the requirement of its use by the employee, so that he has no discretion or choice as to his mode or manner of coming to work, such place and its use seem logically to become elements or factors in the employment, and the injury thus arises out of the employment and is incurred in the course thereof. But, on the contrary, if the employee, at the time of the injury, has gone beyond the premises of the employer, or has not reached them, and has chosen his own place or mode of travel, the injury does not arise out of his employment, nor is it within the scope thereof.' "

The distinction between instances where the employee is on a special mission and one merely going to or from work carrying work which is done at home is well illustrated in *Whitney* v. *Hazard Lead Works et al.*, 105 Conn. 512, 136 A. 105, in which the court said [page 106] :

"* * * She could not, under the rule governing the ordinary case be regarded as in the course of her employment while upon the highway. * * * The office that was maintained by plaintiff in her own home was maintained * * * for the convenience of the plaintiff. It was not established, controlled or maintained by the defendant employer. * * * Employees of any business, of any degree, who carry work from their place of business to their home and there complete it, cannot be regarded as in the course of their employment. * * * Nor can they be regarded as in the course of their employment when they are returning in the morning with the completed work to their place of their employment any more than they could be so regarded when they were returning without work on other mornings."

And in *Ocean Accident & Guarantee Company* v. *Industrial Accident Commission*, 173 Cal. 313, 159 P. 1041, L. R. A. 1917B, 336, an award was annulled and the court said [page 1044] : ■

"In the very broadest sense, of course, it is true that an injury which happens to a man who is on his way to his place of employment is an injury 'growing out of and incidental to his employment,' since a necessary part of the employment in that the employe shall go to and return from his place of labor. *But it is to be noted that the right to an award is not founded upon the fact that the injury grows out of and is incidental to his employment. It is founded upon the fact that the service he is rendering at the time of the injury grows out of and is incidental to the employment.* Therefore an employe going to and from his place of employment is not rendering any service, and begins to render such service only when, as has been said, arriving at the place of his employment, he proceeds to use some instrumentality provided, by means of which he immediately places himself in a position to perform his tasks." (Italics added.)

Other cases to the same effect are: *Denver & Rio Grande W. R. Co.* v. *Industrial Commission*, 72 Utah 199, 269 P. 512, 62 A. L. R. 1436; *North Point Consol. Irrigation Co.* v. *In-*

*dustrial Commission,* 61 Utah 421, 214 P. 22; *Ogden Transit Co. & Fireman's Fund Indemnity Company* v. *Industrial Commission,* 95 Utah 66, 79 P. 2d 17; *Roberts* v. *Industrial Commission,* 87 Utah 10, 47 P. 2d 1052; *Jellico Grocery Co.* v. *Hendrickson,* 172 Tenn. 148, 110 S. W. 2d 333; *Eby* v. *Industrial Accident Commission,* 75 Cal. App. 280, 242 P. 901; *Rawson's Case,* 126 Me. 563, 140 A. 365. No useful purpose would be subserved by prolonging this opinion in distinguishing the cases cited by respondent. We have examined them and find them generally in harmony with what is here said.

The award of the Industrial Commission is annulled and the cause remanded to the Commission for proper proceedings.

FOLLAND, C. J., and MOFFAT and WOLFE, JJ., concur.