29305. LUMBERMEN'S MUTUAL CASUALTY COMPANY et al. v. BABB.

Decided March 20, 1942. Rehearing denied April 2, 1942.

*Gambrell & White,* for plaintiffs in error.
*Charles G. Bruce, E. W. Maynard,* contra.

STEPHENS, P. J. On January 6, 1940, J. O. Babb filed a claim for compensation with the Industrial Board in which he alleged that on January 14, 1939, he sustained an accidental injury which was compensable under the workmen's compensation law. Hearings on the claim were held before Director Stanley and Deputy-Director Hartley, and on September 9, 1940, Director Monroe awarded compensation finding that the claimant had, on the above date, sustained an accidental injury which arose out of and in the course of his employment as an insurance salesman by Associated Mutuals Incorporated. An appeal from this award to Fulton superior court was entered on September 24, 1940, by the employer and insurance carrier, and on March 8, 1941, an order was rendered by Judge Walter C. Hendrix recommitting the case to the

Industrial Board in order that a statement of findings on the ques-tion of subrogation might be formulated. All other issues in the case were retained by the superior court without decision, pending the further action of the Industrial Board. On April 21, 1941, an additional hearing was held by Director Monroe who, on May 14, 1941, rendered an award denying the right of subrogation to the employer. The employer and insurance carrier appealed from this finding to the superior court, and on July 14, 1941, identical orders were rendered in both appeals overruling them and sustaining the awards. The employer and insurance carrier excepted.

The employer contends that the finding of September 9, 1940, that the claimant had sustained an accidental injury, which arose out of and in the course of his employment, and awarding compensation, was contrary to law in that it appeared from the evidence adduced before the Industrial Board that the claimant's injury was caused by an accident which did not arise out of and in the course of his employment and was therefore not compensable. The claimant was an insurance salesman, employed at the time of his injury by the Associated Mutuals Incorporated. The accident occurred about 5 p. m. on Saturday January 14, 1940. The regular working hours of the claimant for the week ceased at noon on Saturday of each week. Evidence to support the finding of fact of Director Monroe that the claimant's injury was compensable in that it resulted from an accident which arose out of and in the course of claimant's employment was to the following effect: "Claimant's work required him to contact customers or prospects to sell and collect for insurance; and therefore he was required to work outside the office of the company. . . On January 14, 1939, at about 5:00 p. m. claimant left his home at 206 East Yale Street in College Park, Georgia, with the intention of going to the business section of the town to contact a prospect and deliver an insurance policy. Claimant had sold a policy of insurance to one W. P. Oxford, who operated a grocery store in College Park, and had made an appointment with Oxford's father to contact him at the store late on the afternoon of January 14. Claimant stopped at the store, which was about a block from his home, and delivered the policy of insurance to W. P. Oxford. Oxford told claimant that he did not have any money with which to pay the premium but that his father had gone to a barber shop on the west side of

town, and if claimant would go there his father would probably pay the premium. Claimant then left the store and drove his automobile across the John Wesley railway crossing, which was directly in front of the store, crossing over on the west side of the railway tracks and onto West Main Street. Claimant stopped at the barber shop and inquired about Oxford and found that he had already left the barber shop. Claimant then went into a ten-cent store and made a purchase of a Chinese checker board and some fig bars. He then got into his automobile for the purpose of returning to the store to contact Oxford, drove south along Main Street to John Wesley Avenue, and turned left to cross the John Wesley railway crossing for the purpose of going to the store which was just beyond the crossing, when an approaching train struck his automobile and injured the claimant for which injury he now claims compensation." The claimant, "who was a traveling insurance salesman, had no regular hours of work." He "reported at the office of the company early in the morning, and he then left the office and traveled around contacting customers, and had no particular hour for quitting work." He "did a great deal of his work at night." The "accident occurred on a Saturday afternoon, and the office of the company usually closed at 1:00 o'clock on Saturday; but the claimant was not required to report back at the office before closing after having reported early in the morning, and he sold insurance on Saturday afternoons just the same as on other afternoons."

The claimant contended that he left his home for the purpose of going to the business section of College Park to deliver a policy of insurance and collect the premium; that he delivered the policy but was unable to collect the premium at that time; that the person to whom he delivered the policy told him he might get some money from such person's father who had gone across the railroad to a barber shop, and claimant went to the barber shop but did not locate this man; that he then went to the ten-cent store and purchased the Chinese checkers and fig bars, and that he was returning to the store, where he had delivered the policy and which was on his direct route back home, for the purpose of contacting his customer and "with the intention of then going home," when he entered upon the railroad crossing and was struck by the train.

Before an injury is compensable under the workmen's compensa-

tion act it must be caused "by accident arising out of and in the course of the employment." Code § 114-102. The courts have held that such an injury must arise both out of and in the course of the employment, and that neither alone is sufficient. *New Amsterdam Casualty Co.* v. *Sumrell*, 30 *Ga. App.* 682 (118 S. E. 786); *Maryland Casualty Co.* v. *Brown*, 48 *Ga. App.* 822 (173 S. E. 925). An injury arises "in the course of the employment" when the accident occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties, or engaged in do-doing something incidental thereto. An accident "arises out of" the employment when it arises because of it, as when the employment is a contributing cause. *Maryland Casualty Co.* v. *Brown*, supra. Arising out of and in the course of the employment must concur before the workmen's compensation act can apply to an injury to an employee. *Employers Liability Assurance Cor.* v. *Woodward*, 53 *Ga. App.* 778 (187 S. E. 142).

There was evidence to the effect that the claimant, at the time of his injury by being run into by the train, was traveling in his automobile and going to the store of his customer for the purpose of collecting an insurance premium, and that the claimant at the time was performing the duties of his employment. It can not be determined conclusively from the evidence that the claimant would not have been where he was at the time of the accident if he had not been going to collect the insurance premium. The rule is well stated in the following which is taken from Vitagraph Inc. v. Industrial Com., 96 Utah, 190 (85 Pac. 2d, 601): "If the motivating purpose of the trip was personal interest, that is, if the journey or trip would have been made just the same without the interest or task to be done for the employer, an injury in the course of travel is not in the course of employment, but if the journey or trip would have been made for the work or business of the employer, had the element of personal interest been lacking, the injury was in the course of employment and is compensable." It is therefore inferable from the evidence, as the director found, that the claimant's injury arose in the course of his employment; that is, while he was proceeding along the course of travel in the pursuit of the duties of his employment. The injury arose out of a hazard to which the claimant was subjected in the pursuit of his

employment in traveling the route which he did pursuant to the duties of his employment. The claimant's employment caused him to cross the railroad track, and he was therefore, by virtue of his employment, subjected to the hazard of being injured by a moving train. It is inferable therefore that the injury arose out of the employment. Applying the rule in *New Amsterdam Casualty Co.* v. *Sumrell,* supra, the evidence authorized the finding of the director that the injuries to the claimant were the result of an accident which arose out of and in the course of his employment. In the *Sumrell* case, in which this court held that the claimant was entitled to compensation, he was injured by the overturning of his automobile while traveling along a roadway proceeding to the place of his employment.

It appears from the evidence that the claimant at the time of the injury received from his employer a salary of $100 per month plus $15 as operating expenses of his automobile which he used in the discharge of his duties. This was a payment to the claimant of $115 for the services rendered by him to the employer, and should be counted as salary although $15 of it consisted in payment to him for the expense of the operation of his automobile. There is therefore no merit in the contention of the employer and the insurance carrier that the director was in error in fixing compensation on the basis of a salary of $115 per month instead of on the basis of $100 per month.

It appears from the evidence that as a result of the accident the claimant suffered extremely severe personal injuries which themselves would authorize an inference that his capacity to work was considerably impaired. There was medical testimony to the effect that, and the director so found, the claimant's capacity to work had been impaired $33\frac{1}{3}$ per cent. The nature of his injuries and this reduction in his capacity to work, when taken in connection with evidence that the claimant was unable afterwards to work regularly at any job, although he worked some, and that he frequently had to go home and rest during the day was sufficient to authorize the director to conclude, in the absence of any definite evidence as to the claimant's actual earnings after his injury, that his earning capacity was impaired $33\frac{1}{3}$ per cent. as found by the director.

The sum of $1250 which the claimant received from the railroad

company as a third-party tort-feasor causing his injuries, was not a legal liability resulting from an adjudication in a lawsuit, but was received in a settlement by him with the railroad company. Under *Walker* v. *Employers Liability Assurance Cor.,* 66 *Ga. App.* 198 (17 S. E. 2d, 306), and *American Mutual Liability Insurance Co.* v. *Wigley,* 179 *Ga.* 764 (177 S. E. 568), the person liable to pay compensation is not entitled to a subrogation of the claimant's rights against the railroad company, and not entitled to have any of the sum collected by the claimant from the railroad company set off against the amount of compensation awarded.

The evidence authorized a finding that the claimant was entitled to the full amount of compensation awarded. The superior court did not err in affirming the awards of the director.

*Judgment affirmed. Sutton and Felton, JJ., concur.*