## A91A0609. ATLANTA JOURNAL & CONSTITUTION et al. v. SIMS.
### (407 SE2d 464)

SOGNIER, Chief Judge.

Regenia Sims sought workers' compensation benefits after she was injured in a December 1989 automobile collision that occurred while she was delivering newspapers in the course of her part time employment with the Atlanta Journal and Constitution. The administrative law judge awarded income benefits based on an amount the parties agreed was Sims's average weekly wage, but rejected her claim that the amount paid to her each week for mileage expense reimbursement should be included in the calculation of her average weekly wage. Sims sought de novo review by the State Board of Workers' Compensation, which adopted the findings of fact and conclusions of law made by the ALJ. Upon appeal to the Superior Court of Cobb County, the court reversed and remanded for a new hearing on a portion of the ALJ's findings and conclusions. We granted the application of the Journal and Constitution and its self-insurance administrator for discretionary appeal.

The portion of the ALJ's order at issue addressed appellee's claim for inclusion of the mileage reimbursement in the average weekly wage computation. The ALJ considered whether the reimbursement was encompased within Rule 260 (a) of the Rules and Regulations of the State Board of Workers' Compensation, which provides that "[c]omputation of wages shall include, in addition to salary, hourly pay, or tips, the reasonable value of food, housing, and other benefits furnished by the employer without charge to the employee which are listed as earned income on employee's Federal Form W-2 for federal income tax purposes." Having found that the mileage reimbursement was treated by appellant as a reimbursable expense, not as earnings; that the reimbursement was calculated based on the number of miles actually driven by each employee; that no federal or state taxes were withheld on the amount paid as reimbursement; and that appellant did not report such reimbursements on its employees' W-2 forms, the ALJ ruled that "[s]ince the mileage reimbursement was not included in [appellee's] *taxable income* . . ., under Board Rule 260 the reimbursement should not be included in her average weekly wage." (Emphasis supplied.) The superior court found this ruling to be "incomprehensible" because the ALJ referred to "taxable income," whereas Rule 260 (a) (which the superior court stated was ambiguous) referred to "earned income." Appellant has enumerated as error the superior court's remand for a new hearing to interpret "earned income" and "taxable income," contending the meaning of the Board's award is clear, while appellee maintains remand was proper because the Board's award was inconsistent with the principle

set forth in *Little Suwannee Lumber Co. v. Fitzgerald*, 172 Ga. App. 144 (322 SE2d 347) (1984), and the ruling in *Lumbermen's Mut. Cas. Co. v. Babb*, 67 Ga. App. 161, 165 (19 SE2d 550) (1942).

Rule 260 was promulgated to set forth what employer payments should be included in the computation required by OCGA § 34-9-260, which provides for payment of workers' compensation benefits based on the employee's "average weekly wages" at the time of the injury, but does not define "wage." Paragraph (a) of Rule 260 was amended in 1988 and 1989 to add the phrase defining "benefits" as those "listed as earned income on employee's Federal Form W-2." The superior court correctly noted that this amendment to Rule 260 (a) contains an ambiguity in that under the federal tax code, the W-2 form is intended for reporting wages and certain other compensation paid by the employer, 26 USC § 6051 (a), with "wages" defined, with certain exceptions, as "all remuneration . . . for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash," 26 USC §§ 3401 (a), 6051 (a) (3); see 26 USC § 3121 (a), while the term "earned income" is defined only in the context of employee stock ownership plans. See 26 USC § 401 (c) (2). Given that the federal income tax code does not define "earned income" for purposes of inclusion on the W-2 form, we must interpret the term "earned income" in Rule 260 (a) using the general principles of statutory construction.

It is well established that all enactments are to be " 'construed in connection and in harmony with the existing law; and that their meaning and effect will be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and the decisions of the courts,' [cits.]" *Wigley v. Hambrick*, 193 Ga. App. 903, 905 (389 SE2d 763) (1989), and that we should "look diligently for the intention of the General Assembly, keeping in view . . . the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Applying these rules of construction, we note that the workers' compensation law is a humanitarian measure to be construed liberally, *Fitzgerald*, supra at 145, and its purpose is to provide " 'compensation for an injured employee in proportion to his loss [of future earnings] on account of the injury.' " *St. Paul-Mercury Indem. Co. v. Idov*, 88 Ga. App. 697, 699 (77 SE2d 327) (1953). No reported appellate decision has established a comprehensive definition of "wage" as used in OCGA § 34-9-260, although past decisions of this court have interpreted the term to include tips (*Employers Comm. Union Ins. Co. v. Bryant*, 130 Ga. App. 596, 597 (2) (203 SE2d 896) (1974)); bonuses (*USF&G Co. v. Branch*, 178 Ga. App. 853, 854-855 (2) (344 SE2d 714) (1986)); and "all payments the employer makes to the employee." *Fitzgerald*, supra. Other jurisdictions have determined that the wage calculation should include " 'not only wages and salary, but

any thing of value received as consideration for the work . . . constituting real economic gain to the employee.' [Cit.]" *Bosworth v. 7-Up Distrib. Co.*, 355 SE2d 339, 340-341 (Va. Ct. App. 1987) (quoting 2 A. Larson, Workmen's Compensation Law, § 60.12 (a) (1986), which was cited with approval in *Bryant*, supra at 597 (2)). Accord *Moorehead v. Industrial Comm.*, 495 P2d 866, 868 (Ariz. Ct. App. 1972); *Scyphers v. H & H Lumber*, 774 P2d 393, 394 (Mont. 1989).

These holdings set forth the principle that any monetary payment or noncash benefit received by the employee in consideration of labor or services performed that constitutes a net economic gain to the employee should be included in the calculation of the average weekly wage. We find that, given the purpose of the Georgia workers' compensation law, which is to compensate the employee fully for lost future earnings, *St. Paul-Mercury Indem. Co.*, supra, the term "wage" in OCGA § 34-9-260 means any payment by the employer to the employee for services rendered in the course of employment that constitutes a net economic gain to the employee. Rule 260 (a), which includes in the wage calculation, inter alia, "food, housing, and other benefits furnished by the employer without charge to the employee" that are listed on the employee's W-2 form, conforms to this definition because an employee's receipt of such benefits, whether in cash or another form, constitutes real economic gain to the employee resulting from the employment. Accordingly, we will interpret the term "earned income on employee's Federal Form W-2" as used in Rule 260 (a) to mean not the narrow, unrelated definition in the federal tax code, but instead to encompass all payments or noncash benefits required to be reported on the employee's W-2 form as income earned by the employee because they constitute real economic gain to the employee and thus are part of the employee's "wage" within the meaning of OCGA § 34-9-260. Similarly, although the term "taxable income" used by the ALJ in the award at issue has a specific meaning for federal tax purposes (gross income minus standard or itemized deductions, 26 USC § 63 (a)), it is clear from the ALJ's analysis that he included in the wage computation only those payments that constituted real economic gain, and that he rejected the mileage payment because appellant treated it as an expense reimbursement, not as reported income.

However, the ALJ did not fully address the question whether any portion of the mileage payments constituted real economic gain to appellee. Although the ALJ did determine that the amount paid as reimbursement was based on the number of miles actually driven by appellee (which distinguishes this case from *Babb*, supra at 165, wherein the employee was paid a flat monthly rate without calculation of actual mileage), the ALJ did not consider whether or to what extent the payments exceeded appellee's actual driving expenses. See

*Bosworth,* supra at 341; see also *Scyphers,* supra at 394-395. If the payments were greater than the automobile expenses she actually incurred during the time she was using her automobile in the course of her employment, the differential constituted real economic gain to appellee and should be included in the average weekly wage calculation. *Fitzgerald,* supra, is factually distinguishable and thus does not require a contrary result, for in that case we held that the employer would not be permitted to deduct from an employee's wage for the purpose of the average weekly wage calculation an amount it had considered as wages for the purpose of computing workers' compensation premiums.

Accordingly, we affirm the superior court's order remanding the case for a new hearing, but direct the superior court to require that the issue on rehearing be limited to comparison of appellee's actual mileage expenses with the amount paid by appellant as reimbursement for those expenses.

*Judgment affirmed with direction. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 27, 1991.

*Swift, Currie, McGhee & Hiers, George L. Pope, Jr., Jodi B. Ginsberg,* for appellants.
*Kenneth C. Pollock,* for appellee.

