A06A1778. CAREMORE, INCORPORATED/WOODDALE NURSING HOME et al. v. HOLLIS.

(642 SE2d 375)

RUFFIN, Judge.

Charlotte Hollis, who sustained a work-related injury, brought a workers' compensation claim against Caremore, Incorporated/Wooddale Nursing Home and Royal & SunAlliance (collectively, "Caremore").[1] Following a hearing on stipulated facts, the State Board of Workers' Compensation (the "Board") assessed penalties against Caremore for violating Board rules and increased Hollis's income benefits. After the superior court affirmed this ruling, we granted Caremore's application for discretionary appeal. On appeal, Caremore asserts that: (1) the Board erred in imposing penalties pursuant to Board Rule 205, which is unlawful; (2) any alleged violation of Board rules could not be deemed "willful"; and (3) the Board erred in calculating Hollis's income benefits. We disagree and affirm.

---

[1] Caremore accepted the claim as compensable and began payment of income and medical benefits.

In a workers' compensation appeal, we view the evidence in a light most favorable to the party prevailing before the Board.[2] The Board's findings, if supported by any evidence, are conclusive and binding.[3] Viewed in this manner, the evidence shows that Caremore began paying both medical and temporary total disability income ("TTD") benefits to Hollis after she sustained a work-related injury. However, Caremore failed to timely file certain Board forms, including the employer's injury report, notice of payment of benefits, and wage statement.[4]

Although Caremore clearly accepted a lower back injury as compensable, Hollis also complained of hip pain. Dr. George Kerr, Hollis's authorized physician, sought to refer Hollis to Dr. Kenneth Kress to determine if the hip complaint was related to the work injury. On March 4, 2004, Dr. Kerr sent Caremore a Form WC-205, requesting preapproval of the evaluation. Under Board Rule 205, Caremore was required to respond within five days. However, Caremore did not respond until March 15, 2004, when it denied the request.[5]

On May 4, 2004, Hollis requested a hearing to determine whether her TTD benefits should be increased. She also sought the imposition of attorney fees, litigation expenses, and statutory penalties against Caremore for its failure to timely file Board forms and to timely respond to her physician's request for advance authorization of the evaluation.[6] Finally, she argued that Dr. Kress's evaluation should be deemed approved based upon Caremore's failure to timely respond to the Form 205 request. However, on August 21, 2004, Caremore authorized the evaluation.

On January 12, 2005, the administrative law judge ("ALJ") concluded that Caremore violated Board Rule 61 (b) (6) by failing to timely file certain Board forms, including its response to Dr. Kerr's request for advance authorization of an evaluation. The ALJ further concluded that the violations were wilful because Caremore "is charged with knowledge of the Board Rules and was specifically made aware of Board Rule 205 upon receipt of the Form WC-205." In addition, the ALJ found that the evaluation and testing requested by

---

[2] See *Dallas v. Flying J, Inc.*, 279 Ga. App. 786, 787 (632 SE2d 389) (2006).

[3] See id.

[4] See Rules and Regulations of the State Board of Workers' Compensation, Rules 61 (b) (1), (2), and (6).

[5] Pursuant to Board Rule 205 (b) (3) (a), an authorized medical provider's request for advance authorization for treatment or testing "stands pre-approved" if the insurer fails to respond to it within five days.

[6] Hollis sought to increase her TTD benefits to include the value of meals that Caremore allowed her to purchase for a reduced rate during her employment.

Hollis's physician stood pre-approved. The ALJ thus imposed penalties and attorney fees for Caremore's violations. Finally, the ALJ increased Hollis's weekly wage by $15 per week to include the economic benefit of the meal subsidy, which raised her TTD benefits.[7]

1. In its first enumeration of error, Caremore contends that the Board — and subsequently the superior court — erred in enforcing Board Rule 205, which it contends "is void as an invalid extension of statutory power not granted to the Board by the Legislature." This rule provides, in pertinent part, that if an authorized medical provider seeks advance authorization for treatment or testing by submitting a WC-205 form, the employer/insurer must respond within five business days or "the treatment or testing stands pre-approved."[8] According to Caremore, this aspect of the rule "constitutes an impermissible extension" of the Board's authority by conclusively determining the compensability of a disputed medical procedure. Caremore cites *Holt Svc. Co. v. Modlin*[9] for the proposition that the Board lacks the power to make rules that abrogate its substantive rights.

Pretermitting the validity of Rule 205 (b) (3) (a), Caremore in fact approved Dr. Kress's evaluation of Hollis before the ALJ ruled on the issue. Thus, the validity of that part of the rule precluding an employer from contesting the compensability of treatment is not before us. Caremore nonetheless argues that it is "aggrieved" by the rule because it "is subject to substantial civil penalty" for wilfully violating the rule. However, the rule at issue requires an insurer to respond to a physician's request for preauthorization within five days — either authorizing or denying the requested treatment. Caremore did neither, and was thus penalized for failing to *timely respond* to the request for preauthorization.[10] As a result of Caremore's failure to provide any response whatsoever, the Board assessed civil penalties and attorney fees, which it is authorized to do.[11] Under these circumstances, Caremore's claim of error lacks merit.

2. Caremore also contends that there was no evidence to support the Board's conclusion that Caremore wilfully failed to comply with Board rules. We disagree.

By specific agreement of the parties and with the permission of the ALJ, the parties submitted a stipulation of facts in lieu of an

---

[7] Although Caremore objected to the increase in TTD benefit payments to Hollis based upon the partial meal subsidy, it stipulated that the economic benefit generated by the meal subsidy was $15 per week.

[8] Board Rule 205 (b) (3) (a).

[9] 163 Ga. App. 283 (293 SE2d 741) (1982).

[10] Specifically, the ALJ noted that "Board Rule 205 was violated when under the terms of such rule, [Caremore] did not timely respond to such properly completed Form WC-205."

[11] See OCGA § 34-9-18 (a).

evidentiary hearing. After a telephone conference with the attorneys and consideration of the parties' factual stipulation, the ALJ imposed civil penalties against Caremore based upon the wilful violation of Board Rules 205, 221 (c), and 61 (b). The ALJ concluded that, notwithstanding its knowledge of Board Rules, Caremore elected to pay TTD benefits to Hollis, at less than the maximum amount set by law, without timely filing required Board forms, including the injury report, wage statement, and notice of payment of benefits. In addition, despite the language on Form WC-205 advising that the insurer was required to respond to the preapproval request within five days, Caremore failed to timely respond to the request for advance authorization. Thus, the ALJ specifically concluded that Caremore's violation of the Rules was wilful, and the Appellate Division agreed.

We conclude that an employer or insurer's conscious indifference to its duty to file required forms constitutes wilfulness.[12] Thus, the evidence supports the Board's finding that Caremore's failure to timely file certain forms and to respond to a request for preapproval of medical services was wilful.[13]

Caremore's reliance on our decision in *Grier v. Proctor*[14] is misplaced, because *Grier* is factually distinguishable from the instant case and is physical precedent only, and therefore not binding.[15] In *Grier*, we concluded that the superior court properly affirmed an award that failed to impose a civil penalty against an employer for temporary cessation of benefits without proper notice to the claimant because there was no evidence from which a finding of wilfulness could be made.[16] "No evidentiary hearing was ever requested by the parties or conducted by the ALJ" and, in addition, the employer submitted a letter to the ALJ explaining the reason for their temporary cessation of benefits.[17] Here, the ALJ cancelled the hearing at the request of the parties and based its decision on the parties' stipulation of facts, in which Caremore admitted, without explanation, that it failed to timely file certain forms and to timely respond to

---

[12] See *Smith v. Byess*, 127 Ga. App. 39, 40 (1) (192 SE2d 552) (1972). See also *State of Ga. v. Graul*, 181 Ga. App. 573, 575 (3) (353 SE2d 70) (1987) (physical precedent only) (employer's failure to file Form WC-205 was wilful and supported civil penalty under OCGA § 34-9-18 (a)).

[13] See *Smith*, supra; *Graul*, supra.

[14] 195 Ga. App. 116 (393 SE2d 18) (1990) (physical precedent only).

[15] See Court of Appeals Rule 33 (a) ("A judgment in which all judges of the Division fully concur is a binding precedent; if there is . . . a concurrence in the judgment only, the opinion is a physical precedent only."); *Groth v. Ace Cash Express*, 276 Ga. App. 350, 353 (623 SE2d 208) (2005).

[16] See *Grier*, supra at 117 (1).

[17] Id. at 117.

the WC-205 request. Under these circumstances, the superior court properly affirmed the Board's imposition of civil penalties against Caremore.[18]

3. Finally, Caremore challenges the Board's decision to increase Hollis's weekly disability benefits to include the value of partially subsidized meals. According to the stipulated facts, Caremore subsidized "on-premises meals." Hollis paid only $1 per meal, although the actual value exceeded that amount, resulting in an economic benefit of $3 per day or $15 per week. The ALJ found that the $15 constituted an economic benefit and thus should be included in calculating Hollis's average weekly wage. Caremore challenges this ruling.

First, Caremore asserts that because it merely allowed Hollis to purchase meals at a reduced cost — rather than providing the meal for no charge — the meal subsidy was not a benefit "furnished without charge" to be included in her wage computation pursuant to Board Rule 260 (a).[19] "[T]he Workers' Compensation Act is a humanitarian measure which should be liberally construed to effectuate its purpose."[20] We are not inclined to give Rule 260 (a) the technical reading advocated by Caremore as it does not serve to effectuate the Act's purpose of providing relief to injured workers.[21] Here, as Caremore stipulated that the meal subsidy provided Hollis a net economic benefit, the Board did not err in concluding that such benefit should be included in calculating Hollis's average weekly wage.

Caremore also argues that the value of the discounted meal sold to Hollis was a noncash fringe benefit that should not have been included as part of her wages. Pursuant to OCGA § 34-9-260, compensation is computed based upon the employee's average weekly wages at the time of injury. "[T]he term 'wage' in OCGA § 34-9-260 means any payment by the employer to the employee for services rendered in the course of employment that constitutes a net economic gain to the employee."[22] Food furnished to an employee without charge conforms to this definition "because an employee's receipt of such benefits, whether in cash or another form, constitutes real economic gain to the employee resulting from the employment."[23]

---

[18] See *Smith*, supra; see also *Graul*, supra.

[19] Board Rule 260 (a) provides that "[c]omputation of wages shall include, in addition to salary, hourly pay, or tips, the reasonable value of food, housing, and other benefits furnished... without charge to the employee which constitute a financial benefit to the employee and are capable of pecuniary calculation."

[20] (Punctuation omitted.) *Footstar, Inc. v. Stevens*, 275 Ga. App. 329, 334 (620 SE2d 588) (2005).

[21] See *Mountainside Med. Center/Pickens Healthcare v. Tanner*, 225 Ga. App. 722 (484 SE2d 706) (1997).

[22] *Atlanta Journal & Constitution v. Sims*, 200 Ga. App. 236, 238 (407 SE2d 464) (1991).

[23] Id.

Thus, the superior court did not err in affirming the Board's inclusion of the partial meal subsidy provided by Caremore in calculating her TTD benefits.[24]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 22, 2007.

*Lowendick, Cuzdey, Ehrmann, Wagner & Stine, Michael D. Thorpe,* for appellants.

*Finn & Hurtt, Thomas M. Finn,* for appellee.

---

[24] See id.; Board Rule 260 (a); see also *Anello v. Friendship Village Convalescent Home,* 546 S2d 1119 (Fla. 1989) (value of meals provided by employer included in calculating rate of workers' compensation benefits); *Bananno v. Employers Mut. Liability Ins. Co. of Wisconsin,* 299 S2d 923 (La. 1974) (value of subsidized meals provided to employee properly included in weekly compensation computation).