**FIFTH DIVISION
MCFADDEN, P. J.,
MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 24, 2019**

# In the Court of Appeals of Georgia

A19A0617. WARE COUNTY BOARD OF EDUCATION et al. v.   GS-022
    TAFT.

GOSS, Judge.

We granted this discretionary appeal by the Ware County Board of Education (the "BOE").[1] The BOE appeals from a superior court order affirming a decision by the Appellate Division of the State Board of Workers' Compensation (the "Appellate Division"), which had reversed an Administrative Law Judge's ("ALJ") decision as to the calculation of employee Roy Taft's average weekly wage, which underlies his disability benefits award. The BOE contends that OCGA § 34-9-260 was misapplied in the determination of Taft's average weekly wage. Finding no error, we affirm.

---

[1] The other appellants in the instant case are Georgia Education Workers' Compensation Trust Fund and Georgia Administrative Services.

Taft is a BOE employee who works a school-year schedule of 220 days, but whose pay is pro-rated and spread over a full calendar year to account for periods during which he did not work because of school breaks or holidays. As will be explained more fully below, the issue presented is whether Taft's disability benefits should be calculated based upon the actual pro-rated pay he receives or should instead include the portion of his pay that he has worked to earn, but that is deferred from each pay period and paid out over the full year.

> In reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party prevailing before the appellate division. The findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board.

(Footnotes omitted.) *Laurens County Bd. of Ed. v. Dewberry*, 296 Ga. App. 204, 205-206 (674 SE2d 73) (2009). "[W]e review de novo erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law." (Citation and punctuation omitted.) *Sanchez v. Carter*, 343 Ga. App. 187, 187 (806 SE2d 638) (2017).

Taft had worked for the BOE as a custodian for 10 years when, on June 15, 2016, he slipped on waxed floors and injured his right shoulder. Taft filed notices of claim for temporary total disability benefits with the State Board of Workers Compensation. The parties agreed that this was an accepted claim. Taft began receiving total temporary disability benefits of $207.61 per week, based on an average weekly gross wage of $311.39, but sought additional total temporary disability benefits, contending that the calculation of his average weekly wage was incorrect.

A hearing was held before an ALJ to determine Taft's correct average weekly wage. The Appellate Division accepted the ALJ's fact findings that Taft was a BOE employee, that there were 220 work days during the school year, that Taft's contract required that he be paid $9.20 per hour for a 40-hour work week, and that his total compensation was $16,192.00 disbursed in equal monthly installments of $1,349.33 throughout a 12-month year. The superior court found that the evidence supported this, and these amounts are not contested on appeal.

The Workers' Compensation Act provides that temporary total disability benefits are calculated based upon a determination of an employee's average weekly wage under OCGA § 34-9-260. OCGA § 34-9-260 (1) provides in pertinent part that:

> If the injured employee shall have worked in the employment in which he was working at the time of the injury . . . during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the *total amount of wages earned* in such employment during the 13 weeks[.]

(Emphasis supplied.) See also Rules and Regulations of the State Board of Worker's Compensation, Rule 260. In the 13 weeks prior to the accident, Taft actually worked a total of 59 days or, as he argues in his appellate brief, 11 weeks and 4 days. Therefore, as the Appellate Division determined, OCGA § 34-9-260 (1) applies because Taft had worked "substantially the whole of 13 weeks immediately preceding the injury[.]" Id.

Pursuant to the Appellate Division's finding, Taft's average weekly wage is calculated at $334.03, based on a calculation of his contractual hourly rate of $9.20, multiplied by 59 eight-hour days, and divided pursuant to OCGA § 34-9-260 (1) by 13. In other words, the finding under appeal calculates Taft's average weekly wage not by what he actually was paid in gross wages per week in the 13 weeks immediately preceding the injury, but by including the amounts that were deferred and paid out over the full calendar year. Once average weekly wage is established, OCGA § 34-9-261 provides that an employee is entitled to receive two-thirds of the

4

average weekly wage, up to a set maximum amount. This is the weekly temporary total disability benefit. Pursuant to the order under appeal, Taft's temporary total disability benefit is $222.69.

In its appeal, by contrast, the BOE argues that Taft's average weekly wage should be calculated based upon what he *actually was paid* during the 13 weeks immediately preceding the injury. The undisputed fact finding is that he was paid in equal monthly installments of $1,349.33, or $16,191.96 per year. The yearly amount, divided by 52 weeks, is $311.38 per week. Thus, the BOE argues, Taft's average weekly gross wage is what he actually was paid for the 13 weeks prior to the injury. The ALJ's opinion, now reversed, does not make a finding as to the dollar amount of Taft's average weekly gross wage, but found that it equated to temporary total disability of $207.61 per week.

"[T]he worker's compensation law is a humanitarian measure to be construed liberally, and its purpose is to provide compensation for an injured employee in proportion to his loss of future earnings on account of the injury." (Citation and punctuation omitted.) *Atlanta Journal & Constitution v. Sims*, 200 Ga. App. 236, 237 (407 SE2d 464) (1991), citing *St. Paul-Mercury Indemnity Co. v. Idov*, 88 Ga. App. 697, 699 (77 SE2d 327) (1953).

5

Taft argues that the statutory language "total amount of wages earned" in OCGA § 34-9-260 (1) means his earnings, for purposes of calculating average weekly wage, were $334.03 per week for the 59 days he actually worked in the 13-week period immediately preceding his injury. This is the amount he earned based on his contractual rate of $9.20 per hour at eight hours per day for 59 days.

In analyzing the meaning of the phrase "total amount of wages earned" in OCGA § 34-9-260 (1), we recognize that our Supreme Court has determined that when considering a statute's meaning,

> we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). While our case law has defined "the term 'wage' in OCGA § 34-9-260 [to] mean any payment by the employer to the employee for services rendered in the course of employment that constitutes a net economic gain to the employee[,]" *Atlanta Journal & Constitution*, 200 Ga. App. at 238, the term "earned"

6

remains undefined. The evidence shows, as outlined above, that Taft *earned* $334.03 gross weekly wages by working 40 hours at his contractual hourly rate of $9.20 for 59 days within the 13-week period, but that a portion of those *earnings* were withheld and instead later paid on a pro-rated basis over 12 months, so that Taft would not have pay gaps over the course of a year. It would defy logic to say that Taft had not earned his contractual rate of pay once he had actually performed the work for which he was being paid – regardless of when that pay was received. Thus, the only "natural and reasonable way, as an ordinary speaker of the English language would" read the statutory term "wages earned" is to focus on when Taft *earned* the money under his contract regardless of when he *received* that money. See *Deal*, 294 Ga. at 173 (1) (a).

As our Supreme Court stated, "deprivation of future earnings . . . is measured by [an employee's] proved earning capacity. We think the fairest yardstick by which his compensation to cover his injury can be measured is what he *was able to earn* and *was actually earning* when the misfortune came upon him." (Citation omitted; emphasis supplied.) *Fulton County Bd. of Educ. v. Thomas*, 299 Ga. 59, 63 (2) (786 SE2d 628) (2016). Taft "was actually earning" $334.03 average weekly gross pay when his injury occurred, even though a portion of those earnings was withheld for payment at later dates. As provided by the plain language of OCGA § 34-9-260 (1),

7

Taft's average weekly wage, based on one-thirteenth of "the total amount of wages earned" during the relevant 13-week period is $334.03. See *United States Fidelity & Guaranty Co. v. Branch*, 178 Ga. App. 853, 853-854 (2) (344 SE2d 714) (1986) (finding that a year-end bonus, which had been earned but not yet paid, should be included in an employee's average weekly wage calculation). We find no error.

*Judgment affirmed. McFadden, P. J., and McMillian, J., concur*.