(748 P.2d 891)

No. 60,557

HARMON RIDGWAY, *Appellee*, v. BOARD OF FORD COUNTY COMMIS-SIONERS and GREAT AMERICAN INSURANCE COMPANY, *Appellants*.

Petition for review denied January 28, 1988.

Opinion filed December 23, 1987.

*Ken Strobel* and *Terry J. Malone*, of Williams, Larson, Strobel, Estes & Malone, P.A., of Dodge City, for appellants.

*John E. Fierro*, of Dodge City, for appellee.

Before BRAZIL, P.J., SIX, J., and JACK L. BURR, District Judge, assigned.

BRAZIL, J.: This is a workers' compensation case in which the Board of County Commissioners (Board) and the Great American Insurance Company (Great American) appeal the district court's calculation of Harmon Ridgway's average weekly wage and the court's conclusion that Harmon Ridgway sustained a 40% permanent partial disability.

Harmon Ridgway worked for the Ford County Sheriff's Department as a civil process officer for eighteen years. As a process server, Harmon delivered summonses, subpoenas, and executions. Because Harmon used his own car to perform his duties as a process server, the county paid him $225.00 a month under a leasing agreement. The county also paid for gas, oil, and tires. In addition, Harmon received $35.00 a month for cleaning his uniform.

On December 18, 1985, Harmon suffered a back injury as he

stepped from his car while in the course of his employment. As a result of this accident, Harmon resigned in April 1986.

The Administrative Law Judge (ALJ) determined that Harmon had suffered a personal injury by accident on December 18, 1985, and that such accidental injury arose out of and in the course of his employment with the Board of Ford County Commissioners. Furthermore, the ALJ determined Harmon's average weekly wage to be $434.58. This sum included the $225.00 per month Harmon received for using his own car and the $35.00 per month he received for cleaning his uniform. The ALJ concluded Harmon had suffered a 30% permanent partial general bodily disability. The Director approved the ALJ's award.

Pursuant to K.S.A. 44-556 and K.S.A. 77-601 *et seq.*, Harmon and the Board together with Great American each filed a petition for judicial review. The district court increased the permanent partial disability award from 30% to 40% on appeal, but otherwise affirmed the ALJ's decision.

The Board and Great American appeal the district court's decision, alleging it erred in determining Harmon's average weekly wage and in determining Harmon's permanent partial disability to be 40%.

The Board and Great American contend that the lease payments and uniform allowance given to Harmon do not constitute "wages" as that term is defined under K.S.A. 44-511; consequently, Harmon's award should be limited to the salary he received for performing his duties as a process server.

K.S.A. 44-511(a)(3) provides:

"The term 'wage' shall be construed to mean the total of the money and any additional compensation which the employee receives for services rendered for the employer in whose employment the employee sustains an injury by accident arising out of and in the course of such employment."

"[T]he primary purpose of workers' compensation benefits is partial replacement of actual or potential wage loss." *Fogle v. Sedgwick County,* 9 Kan. App. 2d 129, 673 P.2d 465 (1983), *aff'd* 235 Kan. 386, 680 P.2d 287 (1984).

Although this particular issue has not been treated in Kansas, other jurisdictions with similar statutes have considered the issue.

Not every payment made to an employee by an employer

constitutes "wages" for purposes of computing an injured employee's average monthly wage. *Moorehead v. Industrial Commission*, 17 Ariz. App. 96, 99, 495 P.2d 866 (1972) (workers' compensation case where claimant claimed his average weekly wage included his travel expenses).

In *Bosworth v. 7-Up Distributing Co.*, 4 Va. App. 161, 355 S.E.2d 339 (1987), the employee used his own car for his employment-related travel. In return, his employer paid him an automobile allowance of $75.00 per week to cover the costs of depreciation, tires, oil, gas, and other expenses associated with the operation of his automobile in his employment. The issue on appeal was whether such payments were made in lieu of wages and, thus, should be included in determining the employee's average weekly wage for purposes of workers' compensation. According to the court, the question was whether the allowance represented a payment made in consideration for work and constituted an economic gain to him. *Bosworth v. 7-Up Distributing Co.*, 4 Va. App. at 163.

The appellate court held that the allowance paid to the employee was in effect a reimbursement for business-related expenses and did not represent an economic gain to him; therefore, such payment was properly not included in the determination of the employee's average weekly wage. 4 Va. App. at 164. In reaching this decision, the court noted that the "automobile expenses, which were incurred solely to meet the travel obligations of his employment, fall within the category of expenditures for an activity that he would not have pursued except for his employment." 4 Va. App. at 164. The evidence indicated that the employee's car expenses exceeded the car allowance provided by the employer. Consequently, the court noted, the car allowance did not represent an economic gain to the employee and could not be included in the average weekly wage calculation. 4 Va. App. at 165. See also *Moorehead v. Industrial Commission*, 17 Ariz. App. at 99 (" 'wages' do not include amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment. Such payments are simply not intended as compensation for services rendered. Before any part of such allowances or reimbursements can be considered as a part of the

employee's 'wages' there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed").

In *Lumbermen's Mutual Casualty Co. v. Babb*, 67 Ga. App. 161, 19 S.E.2d 550 (1942), the employee received a salary of $100.00 per month plus $15 as operating expenses for his automobile which he used in the discharge of his duties. One issue on appeal was whether the director erred in fixing compensation on the basis of a salary of $115 per month instead of on the basis of $100 per month. The court held:

"This was a payment to the claimant of $115 for the services rendered by him to the employer, and should be counted as salary although $15 of it consisted in payment to him for the expense of the operation of his automobile." 67 Ga. App. at 165.

See *Filippone v. Indust. Comm'n*, 41 Colo. App. 322, 590 P.2d 977 (1978); *Hobbs v. Industrial Commission*, 23 Ariz. App. 422, 533 P.2d 1159 (1975).

In the present case, the issue is whether the car and uniform allowances provided by the Board represented a payment made in consideration for work and constituted an economic gain to Harmon. The car allowance provided to Harmon by his employer does not appear to be simply reimbursement for expenses incurred during the course of employment, but, in fact, appears to constitute a real economic gain to Harmon.

Harmon testified that he received $225 per month for using his own car to perform his duties as a process server. In addition, he received $35 per month from his employer to clean his uniform. Harmon testified as follows:

"They offered to, sure, but see, I had bought that old junker that didn't cost me but a little bit of money, had it paid for. All I had to carry was liability, $51.00 every six months, I think that's about it, and if nothing went wrong with it radically, I just pocketed $225.00, that's all, and I come out a long way to the good. That was just extra wages the way I looked at it."

According to Harmon, the $225 "was gravy."

Regarding the uniform allowance, Arlyn Leaming, the Ford County Sheriff, testified as follows: "Q. So what the employee does with the $35.00 is his business as long as his uniform is clean? A. That's correct."

The evidence indicates that the $225 car allowance that Harmon received from his employer represented a financial gain to Harmon and was not simply reimbursement for out-of-pocket work-related expenses. Consequently, the car allowance was properly included in the calculation of Harmon's average weekly wage under K.S.A. 44-511(a)(3). Regarding the uniform allowance, it is not clear whether Harmon used the entire $35 to clean his uniform. Although an employee could spend the $35 in any manner he chose, it is not clear that Harmon, in fact, spent the $35 on something other than cleaning his uniform. Consequently, since the record does not affirmatively indicate the $35 allowance constituted true economic gain for Harmon, the $35 should not have been included in the calculation of Harmon's average weekly wage under K.S.A. 44-511(a)(3).

The Board contends no substantial evidence exists to support a finding that Harmon sustained a 40% permanent partial disability to the body as a whole as a result of his accidental injury.

"In workers' compensation cases, the scope of review by an appellate court is to determine whether the district court's judgment is supported by substantial evidence. The evidence is viewed in the light most favorable to the party prevailing below and if there is substantial evidence to support the district court's factual findings, the appellate court has no power to weigh evidence or reverse the final order of the district court." *Baxter v. L. T. Walls Constr. Co.*, 241 Kan. 588, 591, 738 P.2d 445 (1987).

The governing statute for determining the extent of permanent partial general disability is K.S.A. 44-510e, since the disability involved in this case is not covered by the schedule in K.S.A. 44-510d.

K.S.A. 44-510e(a) provides in part:

"Permanent partial general disability exists when the workman is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d, as amended. The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the workman to engage in work of the same type and character that he was performing at the time of his injury, has been reduced."

The Kansas courts have held that the test for determining permanent partial general disability is "the extent to which the injured worker's ability has been impaired to engage in work of the same type and character he was performing at the time of the

injury." *Carr v. Unit No. 8169*, 237 Kan. 660, 664, 703 P.2d 751 (1985); see *Ploutz v. Ell-Kan Co.*, 234 Kan. 953, 955, 676 P.2d 753 (1984).

In *Davis v. Winchester Packing Co.*, 204 Kan. 215, 460 P.2d 617 (1969), the claimant suffered a back injury in the course of her employment. One issue on appeal was whether the award for claimant's permanent partial disability was supported by substantial evidence. The evidence indicated that the claimant had a 15% functional disability. The examiner found that this amounted to a 75% permanent partial work disability. The director concluded that there was sufficient evidence "'to sustain the examiner's finding that the claimant is suffering a 75% permanent partial work disability of the body as a whole and that this is the amount of disability he . . . should be compensated for even though his . . . functional disability is somewhat less.' " 204 Kan. at 217. The Supreme Court affirmed this finding and held that there was substantial competent evidence to support a finding of a 75% permanent partial work disability. 204 Kan. at 220. The court observed that the claimant in this case had no special skills or training; that all her past jobs required lifting, walking, bending and stooping; and that, since her release from the job, she had been unable to find other employment because of her injury. Expert testimony indicated that, because of her injury, the claimant would have trouble lifting or standing for long periods of time. According to other testimony, she would not be able to find employment because of her injury. 204 Kan. at 219-20. This evidence was sufficient to support a finding of 75% permanent partial work disability, despite the 15% functional disability rating. See *Webb v. Globe Construction Company*, 213 Kan. 681, 518 P.2d 419 (1974); *Davis v. Winchester Packing Co.*, 204 Kan. at 217, 220; *Bahr v. Iowa Beef Processors, Inc.*, 8 Kan. App. 2d 627, 663 P.2d 1144, *rev. denied* 233 Kan. 1091 (1983).

In the present case, the ALJ determined that Harmon had suffered a 15% functional impairment of the body as a whole. Based on this impairment and the other evidence at trial, the district court determined Harmon had suffered a 40% permanent partial work disability to the body as a whole.

Dr. Carl K. Zacharias, the physician who treated Harmon for his back injury, testified that Harmon was suffering from a

degenerated lumbosacral disc and that his motion was limited. According to Zacharias, Harmon's back condition would not improve but would become progressively worse. Furthermore, Zacharias stated that it would be detrimental to Harmon's condition to continue working. Zacharias rated Harmon's injury as a 15% partial and permanent impairment to the body as a whole. In the award, the ALJ stated that he found the medical opinion of Dr. Zacharias more persuasive than that of Dr. Eyster.

Harmon testified that he was still suffering from pain in his lower back. According to Harmon, his position as a process server required him to get in and out of his car and this action particularly caused him pain. Harmon stated that he resigned from his position because of the injury and that he could not perform his duties as a process server. According to Harmon, simply sitting for long periods of time aggravated his injury.

Although evidence exists to the contrary, there is substantial evidence to support a finding that Harmon's ability to engage in employment of the same type and character has been diminished or reduced by 40% and that, therefore, Harmon sustained a 40% permanent partial disability to the body as a whole as a result of his accidental injury.

The Board contends that any permanent partial disability based upon work disability would be substantially lower than the functional impairment rating of 15%. The Board reasons, therefore, that his award should be based on the functional disability of 15%.

"Where the percentage of work disability exceeds the percentage of functional disability, computation of the award may be based on the percentage of work disability. [Citations omitted.] Conversely, it recently has been held that computation of an award may be based on functional disability where the percentage of work disability is not proved, is less, or is none." *Desbien v. Key Milling Co.*, 3 Kan. App. 2d 43, 45, 588 P.2d 482 (1979).

See *Grounds v. Triple J. Constr. Co.*, 4 Kan. App. 2d 325, 332-33, 606 P.2d 484, *rev. denied* 227 Kan. 927 (1980).

The extent of an employee's work disability is "the extent to which the worker's ability to engage in work of the same type and character that he was performing at the time of his injury has been reduced." *Fogle v. Sedgwick County*, 9 Kan. App. 2d at 130. In the present case, the district court found Harmon had

sustained a work disability of 40%. Since the percentage of work disability (40%) exceeds the percentage of functional disability (15%), computation of Harmon's award may be based on the percentage of work disability. *Desbien v. Key Milling Co.*, 3 Kan. App. 2d at 45.

Affirmed in part, reversed in part, and remanded with directions to exclude the uniform allowance in calculating the average weekly wage.