(947 P.2d 440)
No. 75,607

LEVA BOHANAN, *Appellee/Cross-Appellant*, v. U.S.D. No. 260 and KANSAS ASSOCIATION OF SCHOOL BOARDS, *Appellants/Cross-Appellees,* and KANSAS WORKERS COMPENSATION FUND, *Appellee.*

Opinion filed June 20, 1997.

*Douglas Greenwald* and *Anton C. Anderson,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellants/cross-appellees.

*Dennis L. Phelps,* of Wichita, for the appellee/cross-appellant Leva Bohanan.

*Vincent L. Bogart,* of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for the appellee Workers Compensation Fund.

Before PIERRON, P.J., ROGG, S.J., and LARRY T. SOLOMON, District Judge, assigned.

PIERRON, J.: In this workers compensation appeal, U.S.D. No. 260 (district) appeals from an order of the Workers Compensation Board (Board). Bohanan filed a cross-appeal from the Board's order. The Board awarded Leva Bohanan permanent partial disability benefits based on a finding of work disability and also reversed an award from the administrative law judge (ALJ) that imposed liability on the Kansas Workers Compensation Fund (Fund) for 50% of benefits granted to Bohanan. Bohanan filed a cross-appeal on the Board's refusal to include certain fringe benefits in computing the average weekly wage. We affirm.

Bohanan was employed by the district for 25 years as a bus driver. During the last 14 years she also worked as a supply clerk. She has no other vocational training. During the school year, Bohanan drove the bus for 2 hours a day and worked 6 hours as a supply clerk. During the summer, she worked approximately 8 hours per day as a supply clerk.

During her employment, Bohanan had several injuries for which medical treatment was provided. She did not miss significant time from work due to these injuries, and she never received a workers compensation award or settlement. She had been treated by her family physician for intermittent problems with her knees, back, neck, and shoulders and began seeing a chiropractor in 1980 for muscle strains in her lower back, neck, and legs. None of the doctors that treated her prior to 1993 rated her injuries or placed her under permanent restrictions for these injuries.

In July 1993, Bohanan's duties as a supply clerk were changed to include heavy lifting. Previously, her duties were limited to buying supplies, processing the mail, and running errands. On October 13, 1993, Bohanan was injured while moving a 75-pound file cabinet. She immediately reported the injury to her supervisor.

Bohanan went to see Dr. Gage, the chiropractor who had previously treated her. He testified she had the same complaints as on her prior visits and he prescribed the same treatments. The district immediately accommodated Bohanan's job. The district

transferred her from a stick shift bus to a van or station wagon with power steering. The district was unable to accommodate her in the supply clerk position.

After December 1993, Bohanan was treated by Dr. Jane Drazek, M.D., who diagnosed cervical and lumbar hypomotility and my-ofascial or soft tissue pain involving primarily her back. She rated Bohanan at 8% permanent partial impairment of function to the body as a whole pursuant to the guidelines of the American Medical Association. Dr. Drazek opined that 3% or 4% of Bohanan's impairment was attributable to her prior reoccurring back problems but the majority of her impairment was attributable to the 1993 injury. Dr. Drazek restricted Bohanan from prolonged sitting, standing, bending, or lifting, limited her overhead reaching, and allowed no lifting greater than 25 pounds.

Dr. Robert Eyster, an orthopedic surgeon who had treated Bohanan before the accident, was retained by the district for his opinion of her condition. Dr. Eyster reviewed Bohanan's medical reports but did not perform a physical examination. He said he had seen Bohanan for similar complaints in 1992 and her symptoms were the same as prior to her accident; she had only sustained a temporary aggravation. He felt Bohanan could perform the duties of bus driver, study hall monitor, parking lot attendant, and many of the duties she had in her supply clerk position. He did not disagree with Dr. Drazek's rating or restrictions, but felt Bohanan would have had the same rating in 1992.

Jerry Hardin, a human resource/personnel consultant, examined Bohanan to conduct a 15-year task analysis. He found her capable of performing 5 out of the 9 tasks she had performed during her previous 15 years of employment as a bus driver and supply clerk. This equated to a 44% task loss. Dr. Drazek agreed.

Bohanan continued employment with the district as a van and station wagon driver, but the district was unable to accommodate her restrictions as a supply clerk. Instead, she was placed in a temporary position as a parking lot attendant at the same rate of pay for the 6 and ½ hours she had spent in her supply clerk position. She worked as the parking lot attendant until June 30, 1994. In May 1994, Bohanan was informed that the parking lot attendant

position would most likely be eliminated by the district at the end of the school year.

Bohanan, who at age 59 was ineligible for social security retirement benefits, was concerned she could not live on the $119 per week she earned as a school bus driver. She was advised she might be eligible for early retirement. She gave notice on or about June 6, 1994, of her intention to take early retirement. The district sent Bohanan a letter on June 15, 1994, stating that the parking lot attendant position had been reduced to a 2-hour position for the following school year. She received periodic job bulletins from the district during the summer of 1994, listing job openings for the upcoming school year.

On September 30, 1994, the district issued a formal written offer to Bohanan for a position as a study hall monitor at the middle school. The district offered her full 8-hour days of employment; bus driver for 2 hours, parking lot attendant for 1 hour, and study hall monitor for 5 hours. It gave her to October 10, 1994, to respond to the job offer.

While Bohanan felt she could physically perform the position of study hall monitor, she was concerned she did not have the educational qualifications to assist the students with math and reading. Michael Redburn, assistant superintendent for Human Resources at U.S.D. No. 260, testified there were no academic standards for the study hall monitor position and that Bohanan was assured she would not be required to work with the students at a level she was not comfortable with. Bohanan was concerned because the assistant principal at the middle school said she would be required to help the students with their homework.

Bohanan was also concerned that the study hall monitor position was a 9-month position, leaving her without income for the 3 summer months. Thomas Hightower and Redburn testified there would have been summertime positions available within Bohanan's restrictions, but the offers for those positions would not be made until the end of the spring semester.

Bohanan did not accept the study hall monitor position, and the district filled it on October 12, 1994. The district offered her a position as a paraprofessional working with children with physical

and mental disabilities; however, Redburn deemed the job inappropriate for Bohanan given her medical restrictions. Bohanan continued her bus driver position and continued receiving early retirement benefits.

Prior to submission of this case to the ALJ, the parties stipulated that Bohanan had a work-related personal injury accident on October 13, 1993, and as a result of the injury, she had a functional impairment rating of 8% to the body as a whole. The issues for resolution by the ALJ were average weekly wage, nature and extent of disability, and liability of the Fund.

The ALJ awarded permanent partial disability benefits based on a finding of a 52% work disability. Using the information from Hardin and Dr. Drazek, the ALJ found Bohanan had a 44% task loss. The ALJ also found she had a 67% wage loss by finding the percentage difference between her average weekly wage as a supply clerk ($367.06) and her wage now as a bus driver ($119.50). Averaging the task loss and the wage loss, the ALJ found Bohanan had a 56% work disability. The ALJ then subtracted the 4% preexisting impairment, as testified to by Dr. Drazek, to arrive at the 52% work disability figure.

The ALJ concluded that once the contribution amounts were established, pursuant to K.S.A. 44-501(h), the district would be entitled to an offset for any portion of early retirement benefits it contributed on behalf of Bohanan. The ALJ also held that the Fund was liable for 50% of the award.

Both the district and the Fund applied for review with the Board. The Board recalculated Bohanan's average weekly wage in the supply clerk position and found it to be $328.29. This new figure gave Bohanan a 64% wage loss. Averaging the new wage loss with the 44% task loss, the Board arrived at a 54% permanent partial general body work disability. The Board similarly reduced the disability to account for the preexisting functional impairment and found a 50% permanent partial general body work disability.

The Board ruled the district was not entitled to an offset for the amount of Kansas Public Employees Retirement System (KPERS) benefits received by Bohanan. It found that pursuant to K.S.A. 44-501(h), any offset was based upon the amount of benefits provided

by the employer. Since the district did not indicate what percentage of Bohanan's KPERS benefits were provided by the district, no offset was allowed. However, the Board did find the district was entitled to an offset for the benefits Bohanan began receiving from an early retirement insurance policy paid for by the district.

The Board reversed the ALJ's finding as to Fund liability because the district failed in its burden to prove that Bohanan was a "handicapped employee." The Board found that in all incidents prior to her October 13, 1993, accident, Bohanan always returned to work without any physical restrictions.

The district first argues Bohanan is not entitled to permanent partial disability benefits because she refused to perform work within her medical restrictions.

The 1993 workers compensation amendments limited review of all orders issued after October 1, 1993, to questions of law. K.S.A. 44-556(a). Whether the Board's findings of fact are supported by substantial competent evidence (K.S.A. 77-621[c][7]) is a question of law. See *Tovar v. IBP, Inc.*, 15 Kan. App. 2d 782, 784, 817 P.2d 212, *rev. denied* 249 Kan. 778 (1991).

The relevant scope of review is set forth in K.S.A. 77-621(c)(7):

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

7. the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

" 'Substantial evidence' is evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can be reasonably resolved." *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989). This court may not reweigh the evidence presented at the agency hearing or determine the weight or credibility of the witnesses' testimony. *City of Wichita v. Employment Security Bd.*, 13 Kan. App. 2d 729, 733, 779 P.2d 41 (1989).

The district argues Bohanan is precluded from receiving permanent partial general disability compensation based on the presumption of no work disability found in K.S.A. 44-510e(a):

"An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

The district relies on *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994) *rev. denied* 257 Kan. 1091 (1995). In *Foulk*, the claimant was placed on work restrictions after suffering a back injury. In response, the employer offered her a different job within her restrictions at the same rate of pay, but she rejected the offer. On appeal, the claimant argued the presumption of no disability under K.S.A. 1988 Supp. 44-510e(a) did not apply to cases where the worker has the ability to engage in work for comparable wages but does not do so. This court rejected Foulk's argument, noting: "To construe K.S.A. 1988 Supp. 44-510e(a) as claimant suggests would be to reward workers for their refusal to accept a position within their capabilities at a comparable wage." 20 Kan. App. 2d at 284.

The Board found *Foulk* inapplicable to this case since Bohanan had not been offered a comparable job. The Board found that with the exception of the parking lot attendant job, which she was advised would be eliminated at the end of the school year, Bohanan was offered no job which would pay her a comparable wage or 90% of a comparable wage for a 12-month period. The study hall monitor position was a 9-month position. The Board found the only jobs evidenced in the record which would allow Bohanan to work a full 12 months were janitorial jobs which were beyond her physical ability to perform. This finding, which is supported by the evidence, is crucial.

The district argues the study hall monitor position provided Bohanan with a job for the same wage and the same hours as her supply clerk position. It concedes there was no guarantee of summer employment, but argues the decisions concerning summer jobs, many of which were within Bohanan's work restrictions, were not made until the end of the spring semester.

The district also argues the entire chronology of the events in this case established that Bohanan never had any intention of returning to work after June 30, 1994, no matter what employment

she was offered. It cites her failure to check with her doctor to see if any of the jobs were within her restrictions, her complaints about the educational qualifications of the study hall position, and the refusal of employment because it would suspend her early retirement benefits.

The district also argues that even if Bohanan is entitled to work disability, the Board erred in calculating the amount of work disability. It takes issue with the Board's finding that "[t]he only wage claimant has the ability to earn is that of the bus driver." The district contends this finding does not take into account that it restricts Bohanan to a job with a comparable wage for at least 9 months of the year, even if summer employment was uncertain.

We agree with the ALJ and the Board that the facts of this case do not present a situation similar to *Foulk*. As a result, the presumption of no permanent partial work disability is not applicable. Furthermore, we conclude that the Board properly considered Bohanan's loss of work tasks and the difference between the average weekly wage before and after the accident. See K.S.A. 44-510e(a); *Hughes v. Inland Container Corp.*, 247 Kan. 407, 422, 799 P.2d 1011 (1990).

The Board averaged the two figures to reach a disability percentage and then properly subtracted Bohanan's preexisting functional impairment. See *Schad v. Hearthstone Nursing Center*, 16 Kan. App. 2d 50, 53, 816 P.2d 409, *rev. denied* 250 Kan. 806 (1991). As long as the two statutory factors were considered, we cannot say the Board erred in the method it used in awarding a 50% work disability to Bohanan. See *Hughes*, 247 Kan. at 422; *Schad*, 16 Kan. App. 2d at 53.

The district also argues the methodology utilized by the Board in apportioning functional impairment and work disability resulted in an overpayment of benefits.

The issues revolve around the Board's award for permanent partial disability. K.S.A. 44-510e(a) provides that a claimant is entitled to permanent partial general disability beginning with a maximum of 415 weeks of compensation. Bohanan was awarded 16.14 weeks of *temporary* total disability. The number of temporary weeks is subtracted from 415 to arrive at the number of permanent weeks.

However, the statute provides that the first 15 weeks of temporary are not to be counted. Therefore, there are 413.86 weeks of permanent partial general disability.

It appears that, per K.S.A. 44-510e(a)(2), the Board multiplied 413.86 by 50% (the amount of Bohanan's work disability) to arrive at a total of 206.93 weeks of permanent partial disability compensation. However, it also appears the Board multiplied 413.86 by 4% (the amount of Bohanan's functional impairment) to arrive at 16.55 weeks permanent partial disability compensation, which is the number used in the award. The 16.55 weeks would represent compensation during the time when Bohanan was working as a parking lot attendant. It appears the Board then subtracted 16.55 weeks from the total of 206.93 to arrive at its ending number of 190.38 weeks of compensation for the 50% permanent partial disability.

The district argues the Board should not begin compensation to Bohanan at the 50% work disability rate until the date her parking lot attendant position was eliminated some 36.14 weeks after her injury (October 1993 through June 1994). The 36.14 would be multiplied by the 4% functional impairment to arrive at 1.4456 weeks of permanent partial disability during this time period. The district suggests we take the 36.14 weeks (while Bohanan was either receiving temporary benefits or employed at wage of the same rate) and subtract that from 413.86, which would give us 377.72 weeks to multiply by the 50% work disability after the attendant's job was eliminated. This would give 188.86 weeks of compensation during the time when Bohanan was not working full days.

The Board's calculation of Bohanan's award is reasonable. The Board noted that calculations similar to the one suggested by the district produce "erratic and sometimes inequitable results." Had the Board not subtracted the 16.55 weeks of compensation (4% functional impairment time period) from the total of 206.93 (50% work disability), the award might be somewhat unreasonable, but that is not the case.

Next, the district argues the Board erred in holding Bohanan was not a handicapped employee for purposes of assessing Fund liability.

K.S.A. 44-567(a) provides that an employer who knowingly employs or retains a handicapped employee shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

"(1) Whenever a handicapped employee is injured or is disabled or dies as a result of an injury which occurs prior to July 1, 1994, and the administrative law judge awards compensation therefor and finds the injury, disability or the death resulting therefrom probably or most likely would not have occurred but for the preexisting physical or mental impairment of the handicapped employee, all compensation and benefits payable because of the injury, disability or death shall be paid from the workers compensation fund; and

"(2) subject to the other provisions of the workers compensation act, whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the administrative law judge finds the injury probably or most likely would have been sustained or suffered without regard to the employee's preexisting physical or mental impairment but the resulting disability or death was contributed to by the preexisting impairment, the administrative law judge shall determine in a manner which is equitable and reasonable the amount of disability and proportion of the cost of award which is attributable to the employee's preexisting physical or mental impairment, and the amount so found shall be paid from the workers compensation fund."

In order for an employer's liability to be lifted, the employer must prove either that the employer had knowledge of the preexisting impairment at the time the employer employed the handicapped employee or that the employer retained the handicapped employee in employment after acquiring such knowledge. K.S.A. 44-567(b); *Guerrero v. Dold Foods, Inc.*, 22 Kan. App. 2d 53, 57-58, 913 P.2d 612 (1995).

An employer's knowledge of a preexisting impairment may be established by any evidence sufficient to maintain the employer's burden of proof. K.S.A. 44-567(b) provides:

"In order to be relieved of liability under this section, the employer must prove either the employer had knowledge of the preexisting impairment at the time the employer employed the handicapped employee or the employer retained the handicapped employee in employment after acquiring such knowledge."

Additionally, K.S.A. 44-567(b) provides that the employer who has knowledge of a handicap has a right to file a written notice (form 88) with the director of workers compensation for the pur-

pose of creating a statutory presumption of notice. No such notice was filed by the district.

In affirming the ALJ's decision on this issue, the Board found:

"In this instance, while claimant had experienced back problems in the past and had on several occasions obtained chiropractic treatment for her ongoing symptomatology, claimant returned to work after each occasion with no functional impairment and no physical restrictions until claimant's injury on October 13, 1993. The Appeals Board finds that the respondent has failed in its burden of proving that it retained a handicapped employee within the definition contained in K.S.A. 44-566(b). Absent a finding that claimant was handicapped prior to her injury on October 13, 1993, liability cannot be assessed against the Kansas Workers Compensation Fund in this matter. The Appeals Board finds the respondent has failed in its burden of proving its entitlement to an assessment of any portion of this Award against the Kansas Workers Compensation Fund."

"Our scope of review on appeal of a negative finding is to the effect that such a finding will not be disturbed absent proof of an arbitrary disregard of undisputed evidence, or some extrinsic circumstance such as bias, passion, or prejudice." *Duncan v. City of Osage City*, 13 Kan. App. 2d 364, 369, 770 P.2d 843, *rev. denied* 245 Kan. 783 (1989); see *Carter v. Kansas Gas & Electric Co.*, 5 Kan. App. 2d 602, 606, 621 P.2d 448 (1980), *overruled on other grounds Denton v. Sunflower Electric Co-op*, 242 Kan. 430, 748 P.2d 420 (1988). The district does not present any undisputed evidence of a handicap that the Board arbitrarily disregarded.

The district also argues that although the Board correctly offset the amount of Bohanan's early retirement benefits, it erred in not offsetting the amount of KPERS benefits she was receiving. In her cross-appeal, Bohanan argues the offset provisions of K.S.A. 1996 Supp. 44-501(h) are unconstitutional. Even if this court upholds its constitutionality, Bohanan argues that the Board erred in offsetting her early retirement benefits due to insufficient evidence of their amount.

K.S.A. 1996 Supp. 44-501(h) states:

"If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly

equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."

Pursuant to K.S.A. 1996 Supp. 44-501(h), the Board's offset of the benefits Bohanan was receiving from the early retirement insurance policy paid for by the district was not in error. Bohanan does not dispute that she is receiving this benefit. Rather, she insists the record is devoid of any evidence of the precise amount. The district's payroll clerk produced a document entitled "USD #260 EARLY RETIREMENT COMPUTATIONS." This document coupled with the clerk's testimony that Bohanan was drawing her early retirement benefit is sufficient evidence to support the Board's holding and the figures used to compute the offset amount.

The Board's decision to *not* allow an offset for Bohanan's KPERS benefits is equally correct. In its order, the Board stated the district would be entitled to an offset if it could produce evidence of what percentage of Bohanan's KPERS benefits were provided by the district. The Board's holding should not be disturbed since there is no evidence in the record to indicate that amount.

Bohanan takes issue with the constitutionality of K.S.A. 44-501(h). She argues the offset provisions in K.S.A. 44-501(h) should be struck down under both an equal protection and due process analysis.

Longstanding and well-established rules govern this court's review of the constitutionality of a statute. In *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 760, 408 P.2d 877 (1965), the court stated:

"This court is by the Constitution not made the critic of the legislature, but rather, the guardian of the Constitution; and every legislative act comes before this court surrounded with the presumption of constitutionality. That presumption continues until the Act under review clearly appears to contravene some provision of the Constitution. All doubts of invalidity must be resolved in favor of the law. It is not in our province to weigh the desirability of social or economic policy underlying the statute or to question its wisdom; those are purely legislative matters."

In *Brown v. Wichita State University*, 219 Kan. 2, Syl. ¶ 3, 547 P.2d 1015 (1976), the court stated: "[I]t is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

The primary purpose of the Kansas Workers Compensation Act is to compensate for actual or potential wage loss. *Brown v. Goodyear Tire & Rubber Co.*, 3 Kan. App. 2d 648, 654, 599 P.2d 1031 (1979), *aff'd* 227 Kan. 645, 608 P.2d 1356 (1980). K.S.A. 44-501(h) is consistent with this purpose. Although as a policy matter one might approach the question as suggested by Bohanan, that issue has been decided by the legislature. The provision is constitutional.

On cross-appeal, Bohanan also argues the Board erred in not including the value of her vacation and sick leave in computing her average weekly wage. She suggests the ALJ correctly included her vacation and sick leave in her average weekly wage since she lost those benefits at the time the district could no longer accommodate her restrictions.

The Board's finding with regard to the fringe benefits was as follows:

"Insurance benefits provided to claimant through the school district are still being provided to claimant through her school bus driver position. As such, additional fringe benefits would not be computed in claimant's average weekly wage unless or until they are discontinued. See K.S.A. 44-511. Vacation and sick leave are not listed in K.S.A. 44-511 as additional compensation and will not be included in the claimant's average weekly wage."

K.S.A. 44-511(a)(3) defines "wage" as "the total of the money and any additional compensation which the employee receives for services rendered for the employer in whose employment the employee sustains an injury by accident out of and in the course of such employment." Bohanan argues the vacation and sick leave constitute additional compensation within the definition of that term in K.S.A. 44-511(a)(2):

"The term 'additional compensation' shall include and mean only the following: . . . . (D) the average weekly cash value of remuneration for services in any medium other than cash where such remuneration is in lieu of money, which shall

be valued in terms of the average weekly cost to the employer of such remuneration for the employee."

First, Bohanan relies on *Ridgway v. Board of Ford County Comm'rs*, 12 Kan. App. 2d 441, 748 P.2d 891 (1987), *rev. denied* 242 Kan. 903 (1988), to support the argument that her sick pay and vacation pay falls within the general concept of wages. The court stated: "As used in computing an employee's average gross weekly wage under K.S.A. 44-511(a)(3) in workers compensation cases, the term 'wage' includes any allowance which constitutes a payment for work performed to the extent it results in an economic gain to the employee." 12 Kan. App. 2d 441, Syl. ¶ 1. The *Ridgway* court quoted from *Fogle v. Sedgwick County*, 9 Kan. App. 2d 129, 673 P.2d 465 (1983), *aff'd* 235 Kan. 386, 680 P.2d 287 (1984), for that court's statement: "[T]he primary purpose of workers' compensation benefits is partial replacement of actual or potential wage loss." 12 Kan. App. 2d at 442.

The district responds that vacation and sick leave have never been held to fall within the definition of wages. The district maintains these benefits are provided as a matter of course to an employee and have no economic value other than that they entitle the employee to take off certain days when necessary.

Bohanan also argues her vacation pay and sick pay constituted additional compensation. Bohanan's reliance on *Maxwell v. City of Topeka*, 5 Kan. App. 2d 5, 611 P.2d 161, *rev. denied* 228 Kan. 807 (1980), is misplaced. *Maxwell* stands for the principle that additional compensation does not include the value of remuneration until and unless the remuneration is discontinued. The *Maxwell* court expressly stated it did not consider whether the claimant's vacation and sick time constituted additional compensation since it resolved the case on grounds that the remuneration had only been temporarily discontinued and then started again. 5 Kan. App. 2d at 10-11. Bohanan's argument is an extrapolation of dicta.

Under the statutory definition of wages, Bohanan's vacation and sick leave do not constitute "money." The only way they can be included in an employee's average weekly wage is if they constitute "additional compensation." K.S.A. 44-511(a)(2) states that addi-

tional compensation "shall include and mean *only*" the items listed in the statute. (Emphasis added.) Vacation and sick leave are not listed in K.S.A. 44-511(a)(2) and do not constitute "remuneration for services in any medium other than cash." K.S.A. 44-511(a)(2)(D). The Board correctly held Bohanan's vacation and sick leave should not be used in determining Bohanan's average weekly wage.

Affirmed.