NOT DESIGNATED FOR PUBLICATION

No. 126,007

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GRICELDA NAVARRETE,
*Appellee*,

v.

TYSON FRESH MEATS, LLC,
*Appellant*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Submitted without oral argument. Opinion filed February 9, 2024. Affirmed.

*Scott J. Mann*, of Mann Wyatt Tanksley, L.L.C., of Hutchinson, for appellant.

*Thomas G. Munsell*, of Morrow Willnauer Church, LLC, of Kansas City, Missouri, for appellee.

Before BRUNS, P.J., COBLE and PICKERING, JJ.

PER CURIAM:  In this workers compensation case, Gricelda Navarrete appeals the Workers Compensation Board's (Board) calculation of her average weekly wage. Specifically, she contends the Board misinterpreted the Kansas Workers Compensation Act (KWCA), K.S.A. 44-501 et seq., by excluding her vacation and holiday pay from the calculation of her average weekly wage in determining the benefits to which she is entitled. Based on the plain and unambiguous language of K.S.A. 44-511—as well as prior decisions of this court—we conclude the Board did not err. Thus, we affirm.

1

In October 2017, Navarrete sustained injuries in an accident while working for Tyson Fresh Meats, Inc. and applied for workers compensation benefits. As part of her claim, Navarrete sought to have her vacation and holiday pay included in determining her average weekly wage. However, the administrative law judge appointed to hear Navarrete's workers compensation case found that vacation and holiday pay should not be included in the calculation of an employee's average weekly wage under the KWCA.

The administrative law judge reasoned that the resolution of the issue was controlled by this court's holding in *Bohanan v. U.S.D. No. 260*, 24 Kan. App. 2d 362, 947 P.2d 440 (1997). In *Bohanan*, a panel of this court held that "[t]he value of vacation and sick leave are not 'wages' as defined in K.S.A. 44-511(a)(3)." 24 Kan. App. 2d 362, Syl. ¶ 6. Subsequently, the administrative law judge's award was upheld by the Appeals Board.

In its order, the Board explained:

"The Board is duty-bound to follow precedent of our appellate courts and does not have the discretion to choose not to comply with a mandate of the Court of Appeals. The Court in *Bohanan* found vacation pay is not included in the definition of 'money.' This is the rule of law until *Bohanan* is reversed or modified to reflect the statutory changes made to K.S.A. 44-511 in 2011.

"Even if *Bohanan* didn't apply, the plain language of K.S.A. 44-511(a)(3) says wages only include money and other compensation for services rendered. Because vacation pay is not paid for services rendered, it is excluded under K.S.A. 44-511(b)(4).

"Claimant was not 'employed' when she received her vacation pay. 'Employed' has been interpreted, at least under an older version of K.S.A. 44-511, to mean 'the time the worker is employed and on the job.' [*Osmundson v. Sedan Floral, Inc.*, 10 Kan. App.

2d 261, 265, 697 P.2d 85 (1985).] While *Osmundson* does not address vacation pay, the Court of Appeals addressed the inclusion or exclusion of sick and vacation pay in *Fuller v. Farmers Ins. Co.*[, 32 Kan. App. 2d 333, 82 P.3d 526 (2004).] In *Fuller*, the injured worker was restricted to working 20 hours a week and used her sick leave and vacation to compensate for the missing 20 hours she would normally work. The Board in *Fuller* ruled, '[W]hatever sick leave pay and vacation leave pay claimant currently receives is included in computing claimant's post-injury wages . . .[and] [a]s long as claimant is receiving pay from her employer, it should not matter whether that pay is from work performed or from a benefit the employer provides.' The Court of Appeals reversed the Board's decision.

"*Fuller*, citing a prior version of K.S.A. 44-511, noted 'wage' includes the total of money and additional compensation which the employee receives for services rendered for the employer while employed and on the job, following *Osmundson*. *Fuller* stated, '[T]he money received by Fuller for the vacation and sick leave benefits covered the 20 hours per week Fuller did not work and, thus, did not render any service for Farmers.' The case held:

> "Here, Fuller was not 'on the job' during the 20 hours per week she collected sick leave and vacation benefits due to her permanent restrictions. Fuller simply had no work to perform during those 20 hours per week she was not rendering any services for Farmers.

> "Reversed and remanded with directions to exclude the payment of vacation and sick leave benefits from the computation of Fuller's average weekly wage.

"The same is true for this case. The claimant was not working or rendering services, or on the job, for her employer when she received her vacation pay. Both the version of K.S.A. 44-511 decided under *Fuller* and the version applicable to this case consider a worker's average weekly wage to include money and additional compensation for services 'rendered.'

"Based upon the forgoing, the Board finds the SALJ correctly found Claimant's [average weekly wage] . . . .[Citations omitted.]"

3

ANALYSIS

On appeal, the sole issue presented is whether the Board erroneously interpreted K.S.A. 44-511 in determining Navarrete's average weekly wage. We review the Board's order in accordance with the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See K.S.A. 44-556(a); see also *EagleMed, LLC v. Travelers Insurance*, 315 Kan. 411, 419, 509 P.3d 471 (2022). As the party challenging the validity of the Appeals Board's order, Navarrete bears the burden of proving that invalidity. See K.S.A. 77-621(a)(1); see also *EagleMed, LLC*, 315 Kan. at 419.

The KJRA permits judicial relief only for certain statutorily enumerated reasons:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c).

Here, Navarrete fails to identify the statutorily enumerated reason for which she seeks relief. This is problematic because "specificity in pleading under the KJRA is necessary to give focus to the asserted agency error and to give the reviewing court a

proper understanding of the type of relief sought." *Pittsburg State University v. Kansas Bd. of Regents*, 30 Kan. App. 2d 37, 45, 36 P.3d 853 (2001). "Such specification is important because a court reviewing an administrative agency's action may grant relief only if it determines one or more of those provisions is violated." *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 697, 216 P.3d 170 (2009).

Nevertheless, because Navarrete exclusively argues that the Board's order is invalid because it "erred in its interpretation of K.S.A. 44-511," we will construe her argument to come under K.S.A. 77-621(c)(4). See *EagleMed, LLC*, 315 Kan. at 419 (inferring which statutorily enumerated basis for judicial relief applied in workers compensation case when appellant failed to specify). Statutory interpretation involves a question of law over which this court exercises unlimited review. 315 Kan. at 420. "In interpreting a statute, appellate courts are not to give deference to the Board's legal analysis or determination." *Turner v. Pleasant Acres*, 62 Kan. App. 2d 122, Syl. ¶ 2, 506 P.3d 963 (2022).

In *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022), the Kansas Supreme Court held:

> "'The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme, and when a statute is plain and unambiguous, the court must give effect to the legislative intention as expressed in the statutory language.

> "'When a workers compensation statute is plain and unambiguous, this court must give effect to its express language rather than determine what the law should or should not be. The court will not speculate on legislative intent and will not read the statute to add something not readily found in it. If the statutory language is clear, no need exists to resort to statutory construction. [Citations omitted.]'"

5

In reviewing the provisions of the KWCA, it is important to recognize that K.S.A. 44-501b(a) provides "that the workers compensation act shall be liberally construed only for the purpose of bringing employers and employees within the provisions of the act. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder." Moreover, "[i]n a workers compensation case, the substantive rights between the parties are determined by the law in effect on the date of injury. However, amendments . . . that are merely procedural or remedial in nature and that do not prejudicially affect substantive rights of the parties apply to pending cases." *Knoll v. Olathe School District No. 233*, 309 Kan. 578, Syl. ¶ 1, 439 P.3d 313 (2019). In the present case, because Navarrete's injury occurred in October 2017, we apply the provisions of the KWCA in effect on that date.

The KWCA provides, in pertinent part:

"Unless otherwise provided, the employee's average weekly wage for the purpose of computing any compensation benefits provided by the workers compensation act shall be the wages the employee earned during the calendar weeks employed by the employer, up to 26 calendar weeks immediately preceding the date of the injury, divided by the number of calendar weeks the employee actually worked, or by 26 as the case may be." K.S.A. 44-511(b)(1).

Under the KWCA, the term "'wage'" is defined to mean "the total of the money and any additional compensation that the employee receives for services rendered for the employer in whose employment the employee sustains an injury arising out of and in the course of such employment." K.S.A. 44-511(a)(3). Likewise, the KWCA defines the term "'money'" to mean "the gross remuneration, on an hourly, output, salary, commission or other basis earned while employed by the employer, including bonuses and gratuities. Money shall not include any additional compensation, as defined in paragraph 2." K.S.A. 44-511(a)(1).

6

The KWCA also defines the term "'additional compensation'" to mean only:

"(i) Board and lodging when furnished by the employer as part of the wages, which shall be valued at a maximum of $25 per week for board and lodging combined, unless the value has been fixed otherwise by the employer and employee prior to the date of the accident or injury, or unless a higher weekly value is proved; and (ii) employer-paid life insurance, disability insurance, health and accident insurance and employer contributions to pension and profit sharing plans." K.S.A. 44-511(a)(2)(A).

Finally, K.S.A. 44-511(b)(4) provides:

"In determining an employee's average weekly wage with respect to the employer against whom claim for compensation is made, no money or additional compensation paid to or received by the employee from such employer, or from any source other than from such employer, shall be included as wages, except as provided in this section. No wages, other compensation or benefits of any type, except as provided in this section, shall be considered or included in determining the employee's average weekly wage."

In *Bohanan*, this court held that "[t]he value of vacation and sick leave are not 'wages' as defined in K.S.A. 44-511(a)(3)." 24 Kan. App. 2d 362, Syl. ¶ 6. In reaching this conclusion, the panel found:

"Under the statutory definition of wages, [a claimant]'s vacation and sick leave do not constitute 'money.' The only way they can be included in an employee's average weekly wage is if they constitute 'additional compensation.' K.S.A. 44-511(a)(2) states that additional compensation 'shall include and mean *only*' the items listed in the statute. Vacation and sick leave are not listed in K.S.A. 44-511(a)(2) and do not constitute 'remuneration for services in any medium other than cash.' K.S.A. 44-511(a)(2)(D). The Board correctly held [the claimant]'s vacation and sick leave should not be used in determining [the claimant]'s average weekly wage." *Bohanan*, 24 Kan. App. 2d at 375-76.

Similarly, in *Fuller v. Farmer Ins. Co.*, 32 Kan. App. 2d 333, 335, 82 P.3d 526 (2004), this court reiterated the holding in *Bohanan*, finding that "the terms 'wage,' 'additional compensation,' and 'money' as defined in 44–511(a) did not include pay for vacation and sick leave."

Of course, the Board is bound to follow the mandates issued by this court. Nevertheless, Navarrete argues that *Bohanan* is distinguishable and does not reflect current law. We find neither argument persuasive.

Navarrete asserts that *Bohanan* is distinguishable because it interpreted an earlier version of K.S.A. 44-511. But she does not explain how the statute's amendment abrogates the holding in *Bohanan*. Instead, Navarrete simply asserts the bare conclusion that *Bohanan* must be distinguishable because the text of the statute has changed. Issues not adequately briefed are deemed waived or abandoned, and that includes points raised incidentally but not argued. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). Accordingly, we find Navarrete's conclusory statement to be inadequately briefed and therefore abandoned.

Even if that were not the case, we also find that Navarrete's position is inconsistent with the statute's text. The version of the KWCA in effect at the time of her injury defined "'wage'" as "the total of the money and any additional compensation which the employee *receives for services rendered* for the employer in whose employment the employee sustains an injury arising out of and in the course of such employment." (Emphasis added.) K.S.A. 2017 Supp. 44-511(a)(3). It is undisputed that Navarrete did not render services for Tyson during the vacation or holiday time for which she was compensated in the 26-week period immediately preceding her work accident.

The reality is that Navarrete's vacation and holiday pay constituted compensation that she received for time during which she did *not* render services for Tyson—namely

8

vacation and holiday time. Navarrete's vacation time—regardless of whether it was cashed in or taken off—constituted time during which Navarrete did not render services for Tyson. Likewise, while Navarrete may have rendered services for Tyson the day before and the day after a holiday (services for which she received compensation through her regular wages), it is undisputed that Navarrete did not render services for Tyson on the holiday itself. In other words, because Navarrete's vacation and holiday pay constitute compensation for time during which Navarrete did not render services for Tyson, they do not constitute "'wage[s]'" as defined by the KWCA. K.S.A. 2017 Supp. 44-511(a)(3).

Navarrete's proposed construction of the statute fares no better with respect to the statute's definition of "'money.'" The version of the KWCA in effect at the time of her injury defined "'money'" as "the gross remuneration, on an hourly, output, salary, commission or other basis *earned while employed* by the employer, including bonuses and gratuities. Money shall not include any additional compensation, as defined in paragraph 2." (Emphasis added.) K.S.A. 2017 Supp. 44-511(a)(1). Navarrete did not "earn" the compensation for her vacation and holiday time because—as explained above—she did not render services for Tyson during the compensated time.

Additionally, as this court explained in *Fuller*, "'employed' means the time the worker is employed *and on the job*." (Emphasis added.) 32 Kan. App. 2d at 335; see *Elder v. Arma Mobile Transit Co.*, 253 Kan. 824, 828, 861 P.2d 822 (1993). Just as the claimant in *Fuller* was not "on the job" during the time she was collecting sick leave and vacation benefits because she "simply had no work to perform during those 20 hours per week she was not rendering any services for [her employer]," Navarrete likewise was not "on the job" during the time for which she received her vacation and holiday pay because she did not render services for Tyson during that time. *Fuller*, 32 Kan. App. 2d at 335. Because Navarrete's vacation and holiday pay do not satisfy the KWCA's definition of "'wage,'" "'money,'" or "'additional compensation,'" they cannot be included in the calculation of her average weekly wage. See K.S.A. 2017 Supp. 44-511(b)(4) ("No

9

wages, other compensation or benefits of any type, except as provided in this section, shall be considered or included in determining the employee's average weekly wage.").

While it is true that the KWCA's definition of "'money'" has been amended since it was interpreted in *Bohanan* and *Fuller*, the amendments did not abrogate those decisions. This can be seen when we compare the version of K.S.A. 44-511(a)(1) in effect at the time of those decisions with the version in effect in 2017:

| K.S.A. 44-511(a)(1) (Furse 1993) | K.S.A. 2017 Supp. 44-511(a)(1) |
|---|---|
| "The term 'money' shall be construed to mean the gross remuneration, on an hourly, output, salary, commission or other basis, at which the service rendered is recompensed in money by the employer, but it shall not include any additional compensation, as defined in this section, any remuneration in any medium other than cash, or any other compensation or benefits received by the employee from the employer or any other source." | "The term 'money' shall be construed to mean the gross remuneration, on an hourly, output, salary, commission or other basis earned while employed by the employer, including bonuses and gratuities. Money shall not include any additional compensation, as defined in paragraph 2." |

The change in the statutory language simply replaced the phrase "at which the service rendered is recompensed in money by the employer" with the phrase "earned while employed by the employer, including bonuses and gratuities." It also narrowed the language describing what does *not* constitute "'money'" under the statute. Contrary to Navarrete's assertion, these changes in the statutory language did not expand the

10

definition of "'money'" to include vacation and holiday pay. Thus, we find the holding in *Bohanan* continues to be valid.

Navarrete also fails in her attempts to distinguish *Fuller*. Although she argues that "[t]he *Fuller* court did not determine the issue before this Court, whether vacation pay and holiday pay should be included in a worker's pre-injury wage," Navarrete candidly concedes that "[t]his is likely a difference without a distinction" because "[t]he *Fuller* court held that the provisions of K.S.A. 2002 Supp. 44-511(a) and (b) do not differentiate between the compensation of average weekly wage for pre-injury and post-injury wages." We agree.

Further, Navarrete suggests that *Fuller* is factually distinguishable because the claimant in that case "was paid vacation and sick leave pay for 20 hours per week she was not working, and arguably not rendering any services." However, similar to the claimant in *Fuller*, Navarrete received vacation and holiday pay for time "she was not working, and . . . not rendering any services." As a result, we do not find *Fuller* to be distinguishable from this case.

We note that *Bohanan* has been on the books for over 25 years—and *Fuller* for nearly 20 years. And, as Navarrete herself points out, our Legislature has amended the KWCA several times over the years but has chosen not to amend the substance of the statute to abrogate this court's holdings in *Bohanan* and *Fuller*. This suggests legislative acquiescence in the interpretation of K.S.A. 44-511 set forth in those cases. See *State v. Smith*, 311 Kan. 109, 117, 456 P.3d 1004 (2020); see also *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008) ("[W]hen the legislature does not modify a statute in order to avoid a standing judicial construction of that statute, the legislature is presumed to agree with that judicial construction.").

11

CONCLUSION

In summary, we find that *Bohanan* and *Fuller* continue to represent the law of this State. Consequently, we conclude the Board did not err in interpreting the KWCA to exclude Navarrete's vacation and holiday pay from the calculation of her average weekly wage. We further conclude that Navarrete has failed to carry her burden of establishing that the Board's decision is invalid. As a result, we affirm the order of the Board.

Affirmed.